## 174. HUGHES *v.* THE STATE.

1. Neither a policeman nor any other arresting officer has any authority. without a warrant, either upon suspicion or information. that another is carrying a concealed weapon, to arrest the latter and search his person for the purpose of ascertaining whether or not such person is in fact violating the law prohibiting carrying concealed weapons. Even if the person arrested was so violating the law, the offense was not, in legal contemplation, committed in the presence of the officer, and such an arrest, search, and seizure are unauthorized by law, and are, within the meaning of the constitution, unreasonable.

2. As a general rule the law requires a warrant in order to render an arrest legal, whether it be made by a policeman or by any other public officer. There are three exceptions to this rule: where an offense is committed in the officer's presence; where the offender is endeavoring to escape; and where, from other cause, there is likely to be a failure of justice, for want of an officer to issue a warrant.

3. Evidence of guilt, which the defendant, either directly or indirectly, is compelled to disclose by an unlawful search and seizure of his person under an illegal arrest, is not admissible i. a criminal prosecution against the person thus illegally arrested.

Certiorari, from Fulton superior court—Judge Pendleton. November 24, 1906.

Argued January 28,—Decided May 24, 1907.

*Frank L. Haralson,* for plaintiff in error.

*C. D. Hill, solicitor-general, Lowry Arnold,* contra.

RUSSELL, J. The bill of exceptions assigns error on the part of the judge of the superior court in overruling a certiorari. The plaintiff in error was convicted, in the criminal court of Atlanta,

of the offense of carrying a pistol concealed. He sought to have his case reviewed by the superior court, and to that end he presented a petition for certiorari, which was duly sanctioned. The petition showed that the only evidence adduced by the State, upon which a conviction could be had, was objected to on the trial, and a timely motion was made to withdraw it from the consideration of the jury, "because the defendant was forced to produce evidence against himself; the arrest being illegal and the evidence illegal." The assignments of error, in the petition for certiorari, are: (1) That the verdict is contrary to law and contrary to evidence; (2) that the evidence complained of and asked to be ruled out by the court was ¬properly admitted, because this evidence was obtained by an illegal search of defendant's person, which forced defendant to furnish evidence against himself, and the court committed error in not ruling it out upon objection or motion; (3) because the court erred in its charge, as set forth in this petition; (4) because the court erred in not ruling out the evidence complained of as being illegally obtained from J. E. Chapman (the only witness for the State), on motion of defendants counsel, as set out in this certiorari.

The only witness for the State testified as follows: "On Saturday night, September 22, 1906, I saw the defendant and another man turn from Whitehall viaduct, at the ticket office of the W. & A. Railroad, and start across the passway from Peachtree viaduct to Broad street. Myself, George Stein, and Mr. Hutchins, both city policemen, followed them, overtook them, and searched them, and found on the person of the defendant a pistol. The pistol was in his right hip pocket under his coat. We had hold of him when the search was made. We then carried him down to the police station, where we entered a charge against him of concealed weapons. The defendant and the man with him were walking leisurely along the passway when we overtook them. The defendant had not violated any law that we knew of. He was not intoxicated. We did not have any warrant or any other legal process against him. We had no authority to make the search when we found the pistol. He was tried on the charge before Judge Broyles, the recorder, and bound over to this court by him. I did not see the defendant do anything in violation of law before we took a hold of him and searched him. He was being held by the other

policeman while I made the search. He made no attempt to get away or to resist the officers." This was the whole of the State's case.

The defendant proved by both of the witnesses who were with him, and also asserted in his statement, that he was quietly and peaceably walking a public thoroughfare on a peaceable mission; that he was not talking in a loud tone of voice, nor were his companions, and that he turned back because he saw a mob gathering at the corner of Decatur, Whitehall, and Peachtree streets, and he was walking leisurely along, when three city officers walked up behind him, two of them grabbed him, and they immediately commenced searching him; that he was perfectly sober, and was not connected with the mob or with any one connected with the mob; that he is a law-abiding citizen, a carpenter by trade, who receives good wages and sticks closely to is business. The defendant did not say whether the pistol was concealed or not. Both of his witnesses were inclined to the belief that the pistol was not concealed, while they only testified that they had seen it a short time previous to the arrest.

The petitioner in certiorari excepted to the following charge of the court, which was admitted by the answer to be correctly set forth: "You have nothing to do with the arrest of the defendant, or the circumstances attending his arrest. It is not a question with you whether the arrest was legal or illegal, and whether the search and seizure of his person was illegal or not, or whether or not in this search they found a pistol on the defendant. The only question for you to determine is whether or not the defendant had on his person, 'not in an open manner and fully exposed to view, a pistol.' The question with you is (and it is the only question), did he have this pistol concealed? I charge you that this is the law, and that the jury is bound to take it as the law. As to whether or not the officers in this case had a warrant for the defendant, or whether or not he was involved in violation of some law, you have nothing to do. The question for you to decide is whether or not this pistol was concealed."

The defendant's motion for new trial having been overruled, and his certiorari dismissed, the question very clearly presented to us by the court's ruling on the defendant's objection to the evidence and to the charge of the court is whether the evidence objected

to should have been excluded as illegal; in other words, whether the jury can consider, as the judge charged them that they could, evidence from a witness whose only knowledge of the facts was derived by force, after an illegal arrest of the defendant by such witness, acting as an officer. The question has already been decided by this court in *Hammock* v. *State,* 1 *Ga. App.* 126, 58 S. E. 66. But this case is an even more aggravated instance of a violation of the right of personal liberty, and of the constitutional provision which protects the citizen from being compelled to testify against himself, than the *Hammock* case. In that case the sheriff at least acted upon information that the defendant was guilty of the offense. In the present case an orderly citizen, on a peaceable mission, so far as the evidence discloses, while walking on the public thoroughfare, is assaulted, seized, searched, and deprived of his property, either upon bare suspicion or from mere curiosity. While one of the officers holds him, another searches his person and discovers a concealed pistol. The defendant was violating one law. To get proof of this the witness was compelled to violate two.

With the utmost abhorrence and detestation of the practice of carrying deadly weapons concealed, we can not give our sanction to a prosecution for crime which involves a commission of more crimes. Unless two wrongs make a right, prosecutions and convictions on evidence which can only be obtained by graver violations of the law can not be countenanced by any consideration of sound public policy. Surely, unless the law recognizes favorites among crimes and gloats with fond partiality in the prosecution of one offense more than another, it ought not to be necessary to abuse the liberty of the citizen and compel him, directly or indirectly, not only by fear, but by superior force, to furnish evidence against himself. Under our constitution no witness is compelled to testify against himeslf, or even to incriminate himself, and all evidence obtained by force or fear is justly outlawed. As well said by Justice Lumpkin, rendering the opinion in *Pickett* v. *State,* 99 *Ga.* 15, 25 S. E. 609, 59 Am. St. Rep. 226: "While . . an officer may, without a warrant, make an arrest for an offense committed in his presence, he has no authority, upon bare suspicion, or upon mere information derived from others, to arrest a citizen and search his person in order to ascertain whether or not he is carrying a concealed weapon in violation of law. The constitution of

this State expressly declares in the bill of rights that 'the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated.' . . . If any search is unreasonable and obnoxious to our fundamental law, it is one of the kind with which we are now dealing. Even if the person arrested did in fact have a pistol concealed about his person, the fact not being discoverable without a search, the offense of thus carrying it was not, in legal contemplation, committed in the presence of the officer, and the latter violated a sacred constitutional right of the citizen in assuming to exercise a pretended authority to search his person in order to expose his suspected criminality."

In our opinion the ruling of the Supreme Court in the *Pickett* case is controlling, at least so far as the offense of carrying concealed weapons is concerned; and, inasmuch as it has not been reviewed and expressly overruled, subsequent decisions apparently in conflict therewith must yield to the older adjudication. We are aware that in *Dozier* v. *State,* 107 *Ga.* 708, 33 S. E. 418, it was held that it was not error to allow the sheriff to testify that, the accused being in his custody under a warrant for a criminal offense, he searched him and found a pistol concealed in his pocket; but in that case the ruling was put expressly upon the ground that the defendant was not compelled to furnish the evidence, and the case was thus distinguished from the case of *Evans* v. *State,* 106 *Ga.* 519, 32 S. E. 659, 71 Am. St. Rep. 276. The *Dozier* case affords no parallel for the present case. In the first place, as shown by the conclusion of the opinion, the defendant's own statement demanded a verdict of guilty. "He stated that he had the pistol . . . in his hand, that when he saw the sheriff coming he dropped it in his pocket, and the sheriff searched him and found it in his pocket. So that, in any event, the conviction must properly stand." So far as the record in the *Dozier* case shows, no force was necessary to get the pistol from the prisoner; and he was in the lawful custody of an officer, who had arrested him on a warrant for a different offense, and whose duty it was, at least before confining him in jail, to search him and be certain that he had no instrumentalities concealed about his person by which he might effect an escape. The trial judge seems to have framed his charge in accordance with the decision in the *Dozier* case, without

taking into consideration the fact that, throughout the opinion, it is expressly distinguished from those cases, previously decided, in which the defendant was compelled to furnish evidence against himself and where there was no lawful arrest, and the further fact that, for that reason, the rule in the *Dozier* case was never intended to be applicable to a case such as this, where the incriminating evidence was forced from a party not under lawful arrest, but illegally and lawlessly detained.

It must be remembered that when Judge Lumpkin, in the *Williams* case, 100 *Ga.* 521, 28 S. E. 627, 39 L.,R. A. 269, used the language: "We know of no law in Georgia which renders inadmissible in evidence the fruits of an illegal and wrongful search and seizure; nor are we aware of any statute from which it could be logically gathered that the admission of such evidence violates any recognized principle of public policy," the words were merely used arguendo,, and were addressed to an entirely different proposition from the one before us. The objection to the evidence in the *Williams* case was "that, should it be admitted to the jury, it would violate the constitutional and inalienable right of defendant to be secure against such searches and seizures; and she then and there expressly claimed this right, privilege, and immunity, not only under the State constitution, but as one to which she was entitled under the United States constitution," etc. And by a careful reading of the opinion it will be seen that all of the reasoning of the opinion is addressed to the inquiry as to whether the contention of the accused, that her constitutional rights were infringed by the ruling of the trial judge upon the specific objection made, was tenable. The decision was that the objection made was not tenable, for the reason that, in the absence of express legislation directed against the misconduct of private persons, these rights can not be enforced so as to protect the citizen. In the words of the decision (page 519 of 100 *Ga.,* and page 627 of 28 S. E. [39 L. R. A. 269] ): "As we understand it, the main, if not the sole, purpose of our constitutional inhibitions against unreasonable searches and seizures, was to place a salutary restriction upon the powers of government; that is to say, we believe the framers of the constitution of the United States and of this and other States merely sought to provide against any attempt, by legislation or otherwise, to authorize, justify, or declare lawful any unreasonable

search or seizure. This wise restriction was intended to operate upon legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary, so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure, whether confessedly without any color of authority, or sought to be justified under the guise of legislative sanction. For the misconduct of private persons, acting upon their individual responsibility and of their own volition, surely none of the three divisions of government is responsible."

To confirm what we have said above with reference to the *Williams* case, we need only add that in the *Evans* case, 106 *Ga.* 522, 32 S. E. 660, 71 Am. St. Rep. 276, a case practically identical, as to the facts, with the case at bar, the Supreme Court, all the Justices concurring, spoke as follows: "In the case of *Williams* v. *State,* 100 *Ga.* 511, 28 S. E. 624, 39 L. R. A. 269, no such question as the one now under discussion was raised or decided. In that case an officer took from the person of the accused marked coins which were afterwards used in the evidence against her. . . The decision in that case simply holds that the constitutional provision as to unreasonable searches and seizures did not render the evidence inadmissible. It was there said that the purpose of the constitutional provision was to deter the law-making power from authorizing or declaring lawful any unreasonable search or seizure, and to prevent courts and executives from enforcing any law which was violative of this provision, but that it was not intended to operate so as to prevent the courts from receiving evidences of crime, although they might have been obtained by an illegal and unreasonable search and seizure. It would seem from these cases that the law in this State is that evidences of guilt found upon a person under legal arrest may be used in evidence against him, but that, where a person not in legal custody is compelled to furnish incriminating evidence against himself, the evidence is not admissible. The ruling made in the *Day* case, 63 *Ga.* 667, constrains us to reverse the judgment of the court below in refusing a new trial, on the ground that the evidence complained of was improperly admitted."

The case of *Duren* v. *Thomasville, 125 Ga.* 1, 53 S. E. 814, is not similar to the case before us. The most that can be said of the evidence procured by search in that case is that it furnished an incriminatory circumstance which, when taken in connection with other proof in the case, might lead to the conclusion of the defendant's guilt; and the same is true as to the knowledge obtained by search in the *Williams* case. In the case of concealed weapons the unlawful search and seizure, if it discloses anything, affords proof of the only fact necessary to constitute a violation of the law. And this line of distinction between cases where only incriminatory circumstances are developed, and a case where direct evidence of absolute guilt is obtained, is recognized in frequent decisions. It is not necessary, however, to further distinguish the *Duren* case, because, in so far as it conflicts with the *Evans* case, above cited, it must yield to the older adjudication. But, even under the ruling in the *Duren* case, the evidence in the present case should have been rejected, when the motion was made asking that it be withdrawn from the jury; for, if the criterion be, "Who furnished or produced the evidence?" and if it be true that "if the person suspected is made to produce the incriminating evidence it is inadmissible," as held in the *Duren* case, the evidence of the State's only witness in this case was inadmissible, because the defendant was forced to produce the evidence by being so completely overpowered that there was not even a chance to resist. If not bound by the previous decisions of the Supreme Court, the writer would unhesitatingly hold that evidence procured while a prisoner is under arrest, whether such arrest were lawful or unlawful, should be excluded; but the ruling of the Supreme Court, that where a person not in legal custody is compelled to furnish incriminating evidence against himself, the evidence is not admissible, itself requires the grant of a new trial in this case.

*Judgment reversed.*