## 829. SMITH v. THE STATE.

1. The error sufficient to warrant the grant of a new trial must be such an error as contributed to or caused the verdict complained of. A verdict of guilty would have been demanded in this case if the evidence objected to had been excluded; and a new trial need not be granted for the purpose of reaching the same result technically.

2. While one can not be compelled to give evidence against himself, and evidence obtained by an illegal arrest and unlawful seizure and search of one's person is inadmissible, because the defendant is thus compelled to testify against himself, evidence obtained by illegal search or illegal seizure of one's property may be used in evidence.

(a) The protection against self-incrimination, contained in the constitution of this State, article 1, paragraph 6 (Civil Code, §5703), is entirely distinct from the right guaranteed in paragraph 16 of the same article (Civil Code, §5713). The constitution protects a person both against being compelled to give testimony tending to criminate himself, and against unlawful searches and seizures, but the two are entirely distinct.

(b) While, in a prosecution for a violation of the law forbidding the sale of intoxicating liquors, a bottle of whisky forcibly taken from the person of the accused, if illegally arrested, would not be admissible in evidence against him, because he might thereby be compelled to furnish testimony against himself, still, if he be legally arrested, whisky found at his residence or place of business would be admissible in evidence against him.

(c) One who sees another sell whisky in his presence may arrest without a warrant; and may seize the whisky in the possession of the defendant, for the purpose of using it as evidence.

(d) It is only when, by an unlawful search and seizure, under an illegal arrest, the defendant is compelled to furnish incriminating evidence, that such evidence is not admissible.

Accusation of unlawful sale of liquor, from city court of Waycross—Judge Myers. October 17, 1907.

Submitted December 10,—Decided December 20, 1907.

*J. L. Sweat,* for plaintiff in error.

*John C. McDonald, solicitor,* contra.

RUSSELL, J. The defendant was convicted of the offense of selling liquor without a license. He insists that his conviction was illegal and unauthorized. He was tried by the judge of the city court without the intervention of a jury, trial by jury being waived. Two special exceptions are taken to the admission of testimony; and whether the defendant is entitled to a new trial is dependent upon these exceptions. In the 4th ground of the amended motion for new trial error is assigned on the admission of the testimony of the sheriff Woodward, that on the night of September 25, 1907,.

one Jack Dolan drove up in front of the court-house in a drunken condition and stated that he was going to find some "booze." This evidence was objected to by defendant's counsel as being mere hearsay, illegal, and inadmissible against the defendant, and for the reason that Jack Dolan was a competent witness and was not produced, nor any foundation laid for the introduction in evidence of his sayings, and that his drunken condition rendered his statements of no weight and worthy of no credence. In the 5th ground of the motion it is alleged that the court erred in allowing the State to introduce in evidence the whisky claimed to have been taken from the defendant, over the objection that it was not legal evidence and was inadmissible.

The evidence in behalf of the State was as follows: D. A. Woodward, sheriff, testified that on the night of September 25, 1907, Jack Dolan drove up in front of the court-house in a somewhat drunken condition, and about the time that he started off he stated that he was going to get some booze. The sheriff and the constable, C. E. Cason, followed him and, when within about 100 yards of his house, met him coming back with two pints of whisky. The witness then gave him $1.50 in silver money to go back and get two more pint bottles of whisky. Cason and the sheriff went around and up to the house, and heard Dolan call the defendant, who got out of bed. Witness then heard Dolan tell him to let him have two more pints of whisky, and Dolan jingled the money in his hand, as he had been told to do, and witness saw him reach out his hand as if to give the defendant the money for the whisky. After Dolan delivered these two pint bottles of whisky to the sheriff, the sheriff went into the defendant's house and got several other bottles. The sheriff testified that he then arrested the defendant and carried him to the jail. Witness told defendant that he had gotten entirely too bold. In response to this statement of the sheriff the defendant made no denial of selling whisky. On the contrary, he replied that he had not handled as much as was thought; he had only gotten about one case a week. The testimony of the constable, Cason, was substantially as testified by the sheriff. The whisky taken from the defendant by the sheriff, together with the two bottles procured through Dolan, was then introduced in evidence, over the defendant's objection.

The defendant stated, that, on the Saturday night previous to his

arrest, himself, C. E. Smith, John D. Davenport, and Jack Dolan were together, in Waycross, when they agreed to go on a fishing trip, and arranged to order some whisky for the trip, C. E. Smith putting in $3, Davenport $4, and the defendant himself $3; and that he also put in $2 for Jack Dolan, as he did not have the money at the time. Dolan was to pay back the money when the whisky came. The $12 made up was sent to a house in Savannah and the whisky ordered in the defendant's name. When the whisky came it was carried to the defendant's house at Gilchrist Park. The defendant further stated, that, on the night he was arrested, Jack Dolan first came to him and paid him back $1 of the money that he had advanced and he gave Dolan two bottles of the whisky. In about thirty minutes Dolan came back, saying that he must have two more bottles; and "I gave it to him and he handed me the other $1, making the $2 which I had advanced to him." The defendant stated that if Dolan had more money in his hand, he gave him only $1 the last time. The defendant stated that he also paid the express charges, and that before his arrest he bought frying pans, lard, and other things for the fishing trip, and notified Mr. Hickox, who lives down in the Okefenokee swamp, that the party was going down there on a fishing trip, and would bring some "booze" with them. C. E. Smith and J. D. Davenport, as witnesses for the defendant, corroborated the statement of the defendant, as to the agreement to take the fishing trip and as to the purchase of the whisky for that purpose, the several parties contributing, to the purchase of the whisky, the amounts stated by the defendant, and $2 being advanced by the defendant for Dolan, as stated by the defendant. D. W. Pitman, as a witness for the defendant, testified that the defendant, the day before he was arrested, came to the store of the witness and bought two frying pans, some lard, and other things, stating that they were going to take a fishing trip; and that Mr. Hickox came up and the defendant told him that they were going down to his place on a fishing trip and would bring some "booze" with them.

Two questions are raised by the record. Was the evidence sufficient to authorize the finding of guilty? And if it was, is any sufficient reason shown for setting it aside? The answer to the first question is easy. It appeared, in the evidence, that there were 15 quarts of this whisky, which cost $12, and if Dolan was repaying

his money and getting his share of the whisky only, he was paying more for it than it cost; which would be proof that the defendant was exchanging the whisky for money and making a profit of 25 cents per quart in the bargain. The whisky cost only 75 cents per quart. According to the defendant's statement, Dolan paid $2 for two quarts. Furthermore, according to the testimony of Woodward, the defendant, instead of denying that he was selling whisky, tacitly admitted it by saying that he was not handling as much as thought, only about one case a week. In addition to this, if Dolan could pay for his share of the whisky and use it prior to the Okefenokee-swamp trip, on which trip he was to be one of the parties, who was going to pay for Dolan's share of the "booze" consumed at the swamp? For Dolan does not seem to be averse to "booze." From all the facts and circumstances it is plain to see that the defendant sold the whisky to Dolan, and was engaged in selling whisky, even if the testimony of C. E. Smith, Davenport, and Pitman be the truth. Then, should the verdict be set aside because of the other errors assigned? As we have heretofore held, an error, to authorize setting aside, must be such as contributed to or caused the verdict. In this case, even if the rulings of the court were erroneous, and even if the court had ruled to the contrary, the result should have been the same. It is very clear to our minds that the verdict in this case does not need to rest upon the testimony of the sheriff that the remark of Dolan caused him to follow him and thereby procure the subsequent evidence of a sale; nor upon the whisky introduced in evidence. A verdict of guilty would have been demanded if all of the evidence objected to by the defendant had been excluded. So there is no particular reason for granting a new trial in order to have the same result more technically reached.

We will, however, consider the assignments of error contained in the 4th and 5th grounds of the motion. Their consideration at this time, just in advance of State-wide prohibition, may serve a useful purpose. Counsel for defendant in error attempts to sustain his objection to the introduction of the whisky, by the decisions in the cases of *Hammock* v. *State,* 1 *Ga. App.* 126 (58 S. E. 66); and *Hughes* v. *State,* 1 *Ga. App.* 656 (58 S. E. 390). The decisions in these cases will not sustain the contention of plaintiff in error. It must be borne in mind that there are two sections of the constitution, one referring to self-crimination and the other to illegal

searches and seizures, which are entirely distinct. Paragraph 6 of article 1 of the constitution (Civil Code, §5703) declares that "no person shall be compelled to give testimony tending in any manner to criminate himself." In the *Hughes* case the defendant, without any act or volition on his part, and by force, was held while two policemen, who had no warrant nor any knowledge from personal observation that the defendant was guilty of crime, forcibly took from his person the whole evidence of his guilt of the offense of carrying a deadly weapon concealed. We held this to be a clear violation of a constitutional right, because it was, in effect, compelling the defendant to give testimony against himself; and we also held that paragraph 16 of article 1 of the constitution (Civil Code, §5713) was violated and that the search of his person was illegal not only because there was no warrant, but because the officers had no right to arrest without a warrant. This paragraph guarantees against illegal searches. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation," etc. In the *Hughes* case we endeavored to show the distinction between the facts in that case and those in the *Williams* case, 100 *Ga.* 511 (28 S. E. 624, 39 L. R. A. 269), in which there was perhaps an illegal search of the defendant's house. The constitution protects both against unlawful searches and seizures and against one being compelled to give testimony tending to criminate himself; but the two cases are entirely distinct. An authority to search, obtained as provided in paragraph 16, supra, does not convey power to violate the right guaranteed in paragraph 6. A search warrant, to search A. B.'s house for stolen property, would not authorize compelling A. B. to furnish evidence against himself; nor can it be implied. Right to search and seize depends upon the warrant. But it may also depend upon a sufficient substitute for a warrant, which the law provides. It is provided by law (and this question is dealt with in the *Hughes* case) that an arrest may be made without a warrant, where the offense is committed in the presence of an arresting officer, or even of a private individual. The positive knowledge of the violation of the law, on the part either of the officer or of a private citizen, supplies the place of a warrant, under the express provisions of the Penal Code, §896.

The sheriff in this case saw the crime committed. He had a right to arrest the defendant, and he had the right to seize the whisky, by the terms of the decision in *Williams* v. *State,* 100 *Ga.* 515 (28 S. E. 624, 39 L. R. A. 269). The evidence was legally admitted. If a private person see a violation of the law against the selling of intoxicating liquors, he has the right to arrest the seller who committed the offense in his presence, and he has the right to seize the intoxicants being sold and produce them as evidence. This is not compelling the defendant to testify against himself, in the terms of the decision in *Hughes* v. *State,* nor does it in any wise conflict with our rulings in the *Hammock* and *Hughes* cases. Evidence obtained by illegal search of the defendant's premises was held, in *Williams* v. *State,* supra, to be admissible. Evidence obtained where, by force, the defendant was compelled to incriminate himself, in that against his will he was required to expose his guilt, is expressly forbidden, in the decisions of this court to which we have referred; and the admissibility of such evidence, we maintain, has never been upheld in this State. Another wide distinction, which is adverted to in the *Hughes* case, between a case like this and the *Williams* case and some other cases, like carrying concealed weapons, is to be found in the fact that the evidence is not necessarily incriminating. In the case of forcibly taking a pistol, hitherto concealed on the person of the defendant, violently from his person, *everything is disclosed which is necessary to convict.* The discovery of whisky in the dwelling of a citizen, although the search should be illegal, does not afford complete evidence of guilt of any offense against the law. On the contrary its possession would be presumed to be legal and proper, unless there was other evidence which showed that it was being used for violating the law. In the present case the sheriff had the right to seize the whisky because he saw the crime committed, just as I would have a right to arrest a murderer and take his pistol away from him immediately upon seeing the fatal shot fired; and the pistol would be admissible in evidence. But granting that the sheriff had seized the whisky illegally, its production in evidence would not be compelling the defendant to give evidence tending to incriminate himself, even though the seizure of the whisky might have been illegal. It is only where there is an unlawful search and seizure under an *illegal arrest,*

and the person is compelled to furnish incriminating evidence against himself, that such evidence is not admissible. No decision of our courts prohibits the admission of evidence obtained in pursuance of a legal arrest. *Judgment affirmed.*