## 5455.   COOPER *v.* THE STATE.

1. Where one is in possession of a contraband article, or evidence of a crime, concealed in a bag or other receptacle, and is arrested by an officer, without a warrant, where the exigencies of the case do not demand an immediate arrest, and, after the arrest, voluntarily surrenders possession of the bag or receptacle containing the evidentiary article or thing, the evidence against him, revealed by a search of the bag or receptacle, is admissible and legal.

2. The trial judge committed no material error, and the verdict was amply warranted by the evidence.

                    DECIDED APRIL 18, 1914.

Accusation of misdemeanor; from city court of Savannah—Judge Davis Freeman.   December 8, 1913.

*Robert L. Colding,* for plaintiff in error.

*Walter C. Hartridge, solicitor-general,* contra.

WADE, J.   J. W. Cooper was tried in the city court of Savannah on an accusation charging him with having in his possession, in violation of law, certain summer or wood ducks, not between the first day of December, 1912, and the first day of January, 1913. The accusation was preferred on September 18, 1913, and charged the defendant with having committed the offense on July 18, 1913. The trial was on September 26, 1913.. The evidence for the State shows that one C. B. Westcott, a deputy game warden in and for Chatham county, Georgia, had observed Cooper on the Savannah river in a boat, with a gun and a bag; and, believing that the bag contained summer duck, he awaited the arrival of Cooper at the foot of Barnard street in the city of Savannah, and requested Cooper to allow him to see what the bag contained, and, on Cooper's refusal to permit him to inspect the bag, informed Cooper that he believed he had summer duck in his possession, and that he intended then and there to arrest him therefor.   Cooper denied his right to make the arrest without a warrant, though admitting he knew the official position held by Westcott.   He stated that he had ducks in the bag, but that Westcott could not prove that they were summer duck, and refused absolutely to permit Westcott to take charge of the bag or examine it.   Westcott told Cooper to consider himself under arrest, and sent a man to a near-by store to call a policeman, and then went with Cooper to the same store, in order that Cooper might communicate with friends and arrange to give bond. A policeman responded to Westcott's call, and, on his request, ar-

rested Cooper, who had all the time retained possession and control of the bag. Cooper then put the bag down and said, "You can have them now." Westcott said, "Wait one minute now," and opened the mouth of the bag and looked in it, and took two of the ducks out of it. Cooper told Westcott he might have the ducks; and then Westcott opened the bag and took out the ducks and examined them, to be sure that he was right, and found eight ducks. The ducks had been shot and had wounds showing where the shot had gone in, and all the heads and feet had been cut off, but they were recognized by the witness as summer duck, on account of the feathers and the shape of the bodies, and from his general knowledge of such ducks. Cooper admitted, in the presence of this witness and of others, that they were his ducks. The ducks were partly cleaned, but there were enough feathers on them to make them easily distinguishable as summer ducks, and not raft ducks. Cooper would not allow Westcott to touch the bag until after he had been arrested by the policeman. He then threw the bag down and told Westcott he could have it. Westcott did not take hold of the bag at all until after Cooper had thrown it down and consented to his taking it. The ducks found in Cooper's bag were identified as summer ducks by another witness, the county game warden. The defendant made a statement in which he declared that he had not fired a gun in Georgia in five years, and that the ducks found in his possession were killed by him in South Carolina on July 19, 1913. He said further that he had refused to be arrested by the deputy warden, and that he held the bag in his hands until after the policeman had arrested him, and then he forgot and left the bag by the telephone, and, while he was outside, Westcott examined the bag. The ducks found in the possession of Cooper were shown in court.

In the motion for a new trial it is alleged that the court erred in admitting, over the objection of the defendant's counsel, the testimony of the witness Westcott, derived from searching the bag in the possession of the defendant, since it appeared that the defendant was arrested, over his objection, without a warrant, when no offense was committed in the presence of the arresting officer, and the defendant was not endeavoring to escape, and there was no other reason to fear the miscarriage of justice for want of a warrant. The evidence shows that at the time Westcott examined

the bag and ascertained that it held summer duck, it was not in the control of Cooper, but, as he himself alleged in his statement to the jury, he had forgotten and left the bag and its contents by the telephone, inside of O'Brien's place, and, while he (Cooper) was "outside" of the house, Westcott went into the bag and examined the duck, and, according to Westcott's testimony, the bag and the ducks had been voluntarily surrendered by the defendant before the search. Hence it appears to us that the principle enunciated in the case of *Hughes* v. *State,* 2 *Ga. App.* 29 (58 S. E. 390), does not cover the facts in this case, and the evidence obtained from the search of the defendant's game bag was properly admitted by the court.

The defendant complains in the fourth ground of his motion as amended that the court charged the jury as follows: "If, in this case, while this gentleman was under arrest, there was a search made of his bag in his possession to ascertain what was in there, that would be illegal evidence; but if he laid it aside, and, after he laid it aside, it was gone into by the officer and thus its contents were discovered, or if, after he was arrested and before it was searched, he voluntarily (I mean by voluntarily, of course, without it having been taken away from him) said to the officer, 'Here it is, you can have it,' and the officer then went into it, what that disclosed would be legal evidence." The defendant insists that this charge was erroneous because the court, and not the jury, should judge of the competency or incompetency of evidence, and because the court failed to charge the jury in connection therewith that they should disregard the evidence referred to if it was obtained in an illegal manner; and also because the court failed to charge the jury that they would not be authorized to convict the defendant if he objected to a search and it was made without his consent or against his will; and because the witness Westcott admitted that he had insisted on his right to search the defendant's bag and the defendant had denied such right, and had further denied the right of Westcott or anybody else to arrest him. In view of the conclusion set out in the preceding part of this opinion, that the search of the defendant's game bag was not made while the bag was in his possession, which conclusion is sustained not only by the undisputed evidence of the State's witness, but by the statement of the defendant himself at the trial, it appears to us that the failure

of the judge to specifically instruct the jury to disregard the evidence if they found it had been obtained through an illegal search was entirely harmless and could not have injured the defendant; and therefore none of the objections to this excerpt from the charge need be considered.

The evidence amply sustained the verdict, and no material error was committed by the court.

*Judgment affirmed. Roan, J., absent.*