*R. D. Meader, H. Roy Lang,* contra.

---

## 6096.  HEIMER *v.* THE STATE.

RUSSELL, C. J.  1. "Evidence obtained by the illegal seizure and search of a defendant's person, which compels him to incriminate himself, is inadmissible against him.  But incriminating facts discovered by another from an illegal search of the property or premises of the defendant are admissible against him."  *Warren* v. *State,* 6 *Ga. App.* 18 (64 S. E. 111) ; *Hughes* v. *State,* 2 *Ga. App.* 29 (58 S. E. 390) ; *Glover* v. *State,* 4 *Ga. App.* 455 (61 S. E. 862) ; *Croy* v. *State,* 4 *Ga. App.* 456 (61 S. E. 848) ; *Rogers* v. *State,* 4 *Ga. App.* 691 (62 S. E. 96) ; *Williams* v. *State,* 100 *Ga.* 511 (28 S. E. 624, 39 L. R. A. 269) ; *Duren* v. *Thomasville,* 125 *Ga.* 1 (53 S. E. 814).  In the present case the defendant was not even present at the time of the alleged illegal search and when the facts testified about were discovered.

2. The exception taken to the admission of testimony as to facts discovered in an upstairs room of the building occupied by the defendant is not meritorious.  From the fact that the defendant's employee, who was in charge of his business, produced and voluntarily surrendered to the searchers a key to the upstairs room, connected by a stairway with the lower floor of the building occupied by defendant, the jury would have been authorized to find that this room was a place wherein a part of his business was conducted, and therefore was a part of his place of business.

3. The instructions given the jury relative to the alleged improper argument by State's counsel fully cured whatever improper effect, if any, it might have had upon the jury.

4. The court charged the jury as follows: "You, as jurors, and myself as judge, are not concerned in any way with the wisdom or policy of the General Assembly in passing what is known as the prohibition law. You and I belong to a separate branch of the government; we belong to the judicial branch, whose duty it is to enforce the law as we find it written in the books; and by 'enforcing the law' I mean not only is it the duty of the court and jury to convict the guilty when legally accused, but just as well to acquit the innocent when improperly and

illegally accused." This is not subject to the exception that it put too much stress upon the wisdom of the prohibition law of Georgia, or tended to impress the jury with the importance of the case. Special reference to the importance or policy of the criminal statute, for a violation of which one is being prosecuted, may sometimes tend to prejudice the rights of the accused, and the practice is not to be commended, but in the present case it is not made to appear that this charge was not called for and necessary on account of improper argument of counsel, or for some other reason not appearing in the record. But whether such a reason existed or not, this excerpt, when considered in the light of the charge as a whole, was not legally erroneous.

5. The charge of the court in regard to the prima facie inference of guilt raised by the showing that the defendant had in his possession an internal revenue special-tax receipt, as required by section 3239 of the Revised Statutes of the United States, was in accord with the act of the General Assembly approved August 21, 1911 (Acts 1911, p. 181), and was not erroneous.

6. After a careful study of the record in this case, this court is of the opinion that there is no substantial merit in any of the exceptions taken to the charge of the court, or in the admission of the testimony to which objections were interposed. The evidence fully warranted the verdict, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed.*

DECIDED JULY 3, 1915.

Accusation of misdemeanor; from city court of Macon—Judge Hodges. October 26, 1914.

*John R. Cooper,* for plaintiff in error.
*John P. Ross, solicitor-general,* contra.

BROYLES, J., concurring specially. I join in the affirmance of the judgment in this case, but I can not agree with the assumption in the first headnote, that the admission of evidence obtained by an illegal search and seizure of a defendant's person is compelling him to give evidence tending to criminate himself. Neither can I agree that there is, or should be, any distinction between the sacredness of the constitutional inhibitions against an illegal search and seizure of one's person and an unlawful invasion and illegal search of his premises. Both of these rights are equally inviolable, and in my opinion, neither of them, directly or indirectly, prevents the admission of material evidence in a criminal case, although obtained through an illegal search and seizure by an individual, whether a private citizen or an officer of the law. In *Drake* v. *State,* 75 *Ga.* 413, where the shirt and drawers of the accused were taken off his person and admitted in evidence against him, over his objection that it was compelling him to give evidence against him-

self, it was held: "Article 1, section 1, paragraph 6, of the constitution, . . which declares that 'no person shall be compelled to give testimony tending in any manner to criminate himself,' means that, where a person is sworn as a witness in a case, he shall not be compelled to testify to facts that may tend to criminate him. It does not prevent the introduction in evidence, or the exhibition to the jury, of clothing, or any other article, taken from a person accused of crime, where they tend to show his guilt." Justice Blandford, in the opinion, said: "It would be a forced construction of this paragraph of the constitution to hold that clothing or any other article taken from a person accused of crime could not be given in evidence or exhibited to the jury, where the same tended to show his guilt. This clause of the constitution means that, when a person is sworn as a witness in a case, he shall not be compelled to testify to facts that may tend to criminate him." And in the *Williams* case, 100 *Ga.* 511 (28 S. E. 624), Presiding Justice Lumpkin said: "That evidence pertinent and material to the issue is admissible, notwithstanding it may have been illegally procured by the party producing it, was early settled by the English courts." And in a very learned and exhaustive opinion he shows that this ruling has been followed by the great majority of our States, and goes on to say: "It may here be remarked that no distinction is, or should be, observed between an unauthorized search of the person and one which merely involves an invasion of the citizen's rights to be secure in his 'houses, papers and effects;' for none is recognized either by the Federal or by our State constitution; the right to be secure in the lawful possession and enjoyment of property evidently being regarded as no less sacred than the citizen's right to immunity from an unreasonable search of his person. . . As we understand it, the main, if not the sole, purpose of our constitutional inhibitions against unreasonable searches and seizures was to place a salutary restriction upon the powers of government. That is to say, we believe the framers of the constitution of the United States and of this and other States, merely sought to provide against any attempt, by legislation or otherwise, *to authorize, justify or declare lawful* any unreasonable search or seizure. This wise restriction was intended to operate upon legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated

could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary, so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure, whether confessedly without any color of authority, or sought to be justified under the guise of legislative sanction. For the misconduct of private persons, acting upon their individual responsibility and of their own volition, surely none of the three divisions of government is responsible. If an official, a mere petty agent of the State, exceeds or abuses the authority with which he is clothed, he is to be deemed as acting, not for the State, but for himself only; and therefore he alone, and not the State, should be held accountable for his acts. If the constitutional rights of a citizen are invaded by a mere individual, the most that any branch of the government can do is to afford the citizen such redress as is possible, and bring the wrong-doer to account for his unlawful conduct. The office of the Federal and State constitutions is simply to create and declare these rights. To the legislative branch of government is confided the power, and upon that branch alone devolves the duty, of framing such remedial laws as are best calculated to protect the citizen in the enjoyment of such rights, and as will render the same a real, and not an empty, blessing. With faithfully enforcing such laws as are thus provided, the responsibility devolving upon the executive and judicial branches must necessarily end. We know of no law in Georgia which renders inadmissible in evidence the fruits of an illegal and wrongful search and seizure; nor are we aware of any statute from which it could be logically gathered that the admission of such evidence violates any recognized principle of public policy. Whether or not prohibiting the courts from receiving evidence of this character would have any practical and salutary effect in discouraging unreasonable searches and seizures, and thus tend towards the preservation of the citizen's constitutional rights to immunity therefrom, is a matter for legislative determination."

In my humble opinion, the ruling in the *Williams* case, supra, having been made by a full bench and never having been overruled or modified, but, on the contrary, having been cited approvingly many times by the Supreme Court and by this court, should control this court, rather than subsequent decisions of its own or of the

Supreme Court which may be in some material respects in conflict therewith; the law being that the older adjudication, unless reviewed and overruled or modified, is superior and must control. As was said in State *v.* Turner, 82 Kan. 787 (109 Pac. 654, 32 L. R. A. (N. S.) 772, 136 Am. St. R. 129) : "True, in receiving as evidence information unlawfully obtained, the court may seem by judicial sanction to encourage. wrong-doing. But such is not the real aspect of the matter. The sole question under investigation in a criminal trial is the guilt or innocence of the defendant. Nothing not pertinent to that subject can be considered. Everything throwing light upon it should be admitted, unless forbidden by some rule of law. Extorted confessions are not excluded as a rebuke to those who have obtained them, but because they are regarded as of doubtful credibility. . . The courts do not approve a resort to illegal means to obtain evidence. They are not indifferent to a violation of the letter or spirit of the law designed for the protection of one accused of crime. But a far-reaching miscarriage of justice would result if the public were to be denied the right to use convincing evidence of a defendant's guilt because it had been brought to light through the excessive zeal of an individual, whether an officer or not, whose misconduct must be deemed his own act and not that of the State."

NOTE. A writ of error from the Supreme Court of the United States was granted in this case.