The People of the State of New York, Plaintiff, *v.* Frank Esposito, Defendant.

Court of Special Sessions of the City of New York, Borough of Brooklyn, May, 1922.

*Crimes — search and seizure — police officer has right to stop individual acting suspiciously in public and to search his person for revolver — weapon so found, if unlawfully possessed, may be used as evidence against defendant — motion for return of revolver and the prohibition of its use in evidence denied.*

Motion by defendant for dismissal of action and for other relief.

*John E. Ruston,* district attorney (*Ralph E. Hemstreet,* assistant district attorney, of counsel), for People.

*Leibowitz & Shientag,* for defendant.

Edwards, P. J. On March 28, 1922, about twelve-forty-five o'clock in the morning, a police officer of the city of New York, on duty in uniform on Henry street in the borough of Brooklyn, observed the defendant also on the street. He saw the defendant look at him several times. The officer approached the defendant; the latter moved away; the officer hastened in his walk, the defendant thereupon did the same, keeping a distance ahead of the officer, his hands being in the side pockets of his outer coat. This movement of the two continued for a while until the officer shouted to the defendant, ordering him to throw up his hands. The defendant obeyed, the officer went up to him, passed his hand along the sides of the defendant's body outside of his coat, felt

something hard in one of the pockets from which the defendant had just removed his hands, and took therefrom a loaded revolver. The officer asked the defendant if he had a license to carry the weapon, and upon receiving a reply in the negative, the officer says, " I then placed him under arrest."

On the hearing before the magistrate, notwithstanding the objection and demand of dismissal of the defendant, on the ground that the acts of the officer were an unlawful invasion of his personal and constitutional rights, the defendant was held, upon the testimony of the officer to the foregoing facts and the production in evidence of the revolver so taken, for trial in this court; and information has been filed here accordingly. The officer stated at the hearing that the arrest was made after his discovery of the revolver in the defendant's pocket as above set out, and by reason of such discovery; and the correctness of that statement is deemed to be conceded by the district attorney. Upon arraignment here the defendant makes preliminary motion, (1) for dismissal of the action; (2) for an order restraining the district attorney from using any item of the evidence so obtained in this, or any other prosecution of the defendant; (3) for an order directing the police commissioner to return to the defendant the revolver taken from him. In support of the motion the defendant urges that he is entitled to protection as asked for, by reason of the prohibition of unreasonable searches and seizures in the Civil Rights Law; of compelling a person in any criminal case to be a witness against himself contained in section 6, article I, of the Constitution of the state; and of any state depriving any person of property without due process of law, included in the Fourteenth Amendment (§ 1) of the Constitution of the United States. He contends that since upon undisputed facts it appears that the prosecution is based entirely upon proposed evidence which the court cannot lawfully receive, the immediate conclusion of this litigation which he seeks should be granted.

Without attempting complete discussion either of the subject or of the numerous authorities cited by counsel, I endeavor to state succinctly the premises of my conclusions upon the matters presented.

In considering the precedents there must be constantly borne in mind the principle familiar to every student of the dual system of government in this country that in a state court upon matters involving no federal question the supreme law is the law of the forum. The United States is a nation created from a temporary alliance by agreement embodied in a written document specifying with precise particularity the powers of the national government; and as tersely stated in that document (Tenth Amendment),

" The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Hence in state matters this court is bound to follow state doctrine, duly established, even though it be contrary to decisions in similar matters of the Supreme Court of the United States, yielding utmost deference to all that proceeds from that great tribunal, but as to such matters regarding its decisions as determinations in another jurisdiction and not controlling here.

No question under the Federal Constitution is involved in the decision of this motion. Amendments 4 and 5 do not relate to state governments. See preamble to resolution of congress submitting first ten amendments; *Matter of Mohawk Overall Co.*, 210 N. Y. 474, and all decisions, state and national, on the subject.

It cannot be seriously contended that the Fourteenth Amendment creates a rule of evidence pertinent here; and as to the claim of right of property in the revolver the only question is the extent of the valid exercise of the police power of the state, concerning which the authorities in the two jurisdictions are in substantial accord. *People ex rel. Darling* v. *Warden, etc.*, 154 App. Div. 413; *Block* v. *Hirsh*, 256 U. S. 135; 41 Sup. Ct. 458, and kindred cases, N. Y. L. J., May 9, 1922.

It should be noted that the rule of practice, conceived and declared in the federal courts to the effect that the defendant in a criminal case should make a preliminary motion in advance of the trial in order to protect himself against evidence the receipt of which is violative of his rights as resulting from unlawful search or seizure or as involving requirement that he give evidence against himself, has been virtually abandoned; for the Supreme Court said recently in relation to it (*Gouled* v. *United . States*, 255 U. S. 298): " A rule of practice must not be allowed for any technical reason to prevail over a constitutional right." And the same court said in *Hawes* v. *State of Georgia*, 42 Sup. Ct. 204, 205: " it is certainly within the established power of a state to prescribe the evidence which is to be received in the courts of its own government. *Adams* v. *New York*, 192 U. S. 585, 588."

Further as to authorities, in several opinions of courts of this state of higher rank than this court, discussed here by counsel, may be found *dicta* and determinations with which this opinion is not in complete consonance. *E. g.*, *People* v. *Jakira*, 118 Misc. Rep. 303. When, however, it appears to this court in the exercise of its best judgment that matters before it for adjudication are quite within the purview of doctrines fully expounded by the Appellate Division of the Supreme Court and by the Court of Appeals, we should, in proper observance of the rule of *stare decisis*,

follow the determinations of the courts charged with authority to review our decisions.

Moreover, judicial conclusions in cases involving construction of the amendment of 1921 to the Code of Criminal Procedure in relation to intoxicating liquors are not controlling in the matter now before us. True, that statute declares such liquors unlawfully held to be a nuisance and that the property specified is to be confiscated; but it also provides that the establishment of the existence of the nuisance and the consequent confiscation shall depend upon the result of a special statutory judicial proceeding specifically regulated. Substantial adherence to the course of procedure laid down is jurisdictional; and failure of the prosecution must result in order for the restoration of the *status quo*. Code Crim. Pro. § 802-b; *People* v. *DeVasto*, 198 App. Div. 620; *People* v. *Diamond*, 233 N. Y. 130.

The court ought not, by interlocutory order in a common-law criminal action, to direct the restoration of what in the due exercise of legislative authority has been placed in the category of dangerous public nuisances. Besides, the police commissioner has the revolver in custody, not as an officer of this court but as a ministerial officer of the state government in this locality. As such officer he is subject to direction by competent judicial authority; but we have no jurisdiction to make such order.

Doubtless the district attorney, in conducting prosecutions here, is under the direction of the court; but, if we should make the order controlling his action which the defendant applies for, it would be an invasion of the province of the trial court, not authorized by established practice in this jurisdiction.

Finally we reach consideration of the merits, on the application to dismiss. . If, on the undisputed facts, the prosecution must fail, the action should be dismissed. Code Crim. Pro. § 671 (applicable to proceedings in this court, Inferior Criminal Courts Act of the City of New York, § 31, subd. 4).

On fundamentals, surely, the court and advocates on both sides stand on common ground. Any form of autocracy, of usurpation of authority, of " insolence of office," is intolerable in America to-day, as always heretofore. Nor is there controversy here between individualism and collectivism as an abstraction. Society functions for its individuals. A multitudinous community lacking individual aspiration and effort is, to use an algebraic expression, zero to the nth power,— nothing though multiplied indefinitely. But the freedom of the individual citizen is circumscribed by the require-ment of obedience to rules of right conduct where others are concerned and by the mere presence and contact of numerous fellow-citizens, also having rights.

To protect the individual by restraining wanton crime or selfish or careless acts made criminal by law, one of the necessary incidents of our civilization as developed is the peace officer. The study of his functions and of the effect his acts may have in subsequent proceedings, in relation to the situation presented on the defendant's motion, occupies the remainder of this paper.

The conclusion reached is that the motion of the defendant to dismiss should be denied for two reasons, viz., (1) that the acts of the· officer were lawful; (2) that, if the officer transgressed as the defendant declares, yet the testimony of the officer to what happened and the revolver if produced on the trial will be competent and receivable evidence to sustain the information.

The general powers and duties of police officers in this city are set out in chapter VIII of the charter (See especially §§ 315, 337), and their right to arrest without a warrant is limited by the provisions in relation to peace officers generally in section 177 of the Code of Criminal Procedure. It would be distressing to believe that the policeman may detain and search every person whom he may deem to be just object of suspicion. Mr. Justice Putnam in his dissenting opinion in *Lauffer* v. *Downes*, 181 App. Div. 327, includes (p. 330) this paragraph: " Referring to the Statute of Winchester (13 Edw. 1, Stat. 2, c. 4), authorizing arrest of suspicious persons at night, Hawkins' Pleas of the Crown says: ' It is holden that this statute was made in affirmance of the common law and that every private person may by the common law arrest any suspicious night-walker, and detain him till he give a good account of himself, as hath been more fully shewn in the precedent chapter, section twenty' (Vol. 2 [8th ed.], p. 129, § 6)."

This quaint pronouncement of the hard learning of an earlier day is not accepted as part of our present body of law as indicated by the decision of the majority of the court in that case. Affd., 228 N. Y. 549.

But, notwithstanding the statement of the officer of his conclusion as to the legal significance and sequence of his acts, and notwithstanding the concession of the district attorney, it is clear that the arrest happened before, or contemporaneously with, the search. It had inception when the officer told the defendant to put up his hands; it was complete when the defendant obeyed and the officer put his hand on him. The defendant was then in actual custody, confronted with " a condition, not a theory," and the subsequent declaration of arrest by the officer added nothing to that actual condition. Doubtless if the officer had not found the weapon he would have discharged the defendant, in which case, as we shall see, he would have been guilty of a trespass, ending with such discharge; but what actually happened was the

finding and taking of the revolver and the continuance of the custody. Any restraint of liberty is an arrest. *Limbeck* v. *Gerry*, 15 Misc. Rep. 663.

If the arrest was lawful, so was the search. The defendant does not question this, and it is unquestionable. *Smith* v. *Jerome*, 47 Misc. Rep. 22; *Weeks* v. *United States*, 232 U. S. 383.

In the case last cited the court said that according to English and American law it is lawful to search the person of the accused when he is lawfully arrested to discover and seize the fruits or evidences of crime. P. 392.

Was the arrest lawful? The defendant was all the while committing the crime of having the revolver in his personal possession without a license. Was the crime committed in the presence of the officer? The defendant was on the street a few paces from the officer; all that intervened between the officer and the physical object, the body of the offense, was a brief space and a bit of cloth. To this mere propinquity were joined visible indications in some degree significant. Defendant's glancing at the officer and retreat as described when the latter appeared to be about to accost him might reasonably have been considered flight with its implication of guilt. Personal *presence* includes corporeal extension within the sphere of sense perception. *Presence* is not the same as *view*. To justify arrest without a warrant by an officer for a misdemeanor, the statute requires that the offense be actually committed or attempted in the officer's presence. There is no definite statement of the necessary extent of the evidence conveyed to the officer's consciousness. The purpose of the permission is promptness, to secure apprehension and identification. In the emergency the officer proceeds or tarries at his peril. If he does not act he may incur penalty of dereliction. If in arresting he makes mistake of law or fact as to the commission of the offense, no matter how clearly apparent to him may seem the doing of the forbidden act by the person arrested, the officer is a trespasser and liable accordingly. *Stearns* v. *Titus*, 193 N. Y. 272.

The officer has no judicial immunity for errors of judgment. He must be right or suffer. Therefore, if he is right by ultimate determination, he ought not to suffer provided only he has acted in good faith.

Hence the rule deducible according to the law in this state may be stated thus: If a police officer is in bodily reach of a person then and there actually engaged in the commission of a misdemeanor, and perceiving indications of the commission of the offense sufficient to induce reasonable belief of the fact, acting in good faith intending performance of duty, proceeds to arrest such person, the arrest is lawful as for the commission of a crime in the officer's

presence. It has been held in another jurisdiction that reasonable prudence of action on the officer's part is sufficient to protect him in arresting for a crime supposed to have been committed in his presence. *O'Connor* v. *Bucklin,* 59 N. H. 589. See, also, dictum to like effect in *People* v. *Stuyvesant,* 197 App. Div. 641.

Quite contrary to the argument in this division, and in the text of this opinion, is *Hughes* v. *State,* 2 Ga. App. 29.

But if it were conceded and indisputable that the officer's acts were utterly without justification, and constituted unlawful search and seizure forbidden by the Civil Rights Law (§ 8), the evidence disclosed thereby is nevertheless available, if produced on the trial, for use in maintaining this prosecution. 4 Wigm. Ev. §§ 2183, 2264; *People* v. *Adams,* 176 N. Y. 351; *People* v. *McDonald,* 177 App. Div. 806.

Defendant by the argument of counsel contends that the two cases just cited are distinguishable from the situation presented by his motion because in those cases objection to use of the evidence such as he here condemns was first made upon the trial whereas the proper practice is to raise such objection by some preliminary application. No such rule of practice was declared in those cases and no such rule prevails in this state. If the use of such evidence is violative of the defendant's rights under the constitution or the laws of the state, then the evidence would be incompetent whenever offered and would be excluded upon objection at the trial in the same manner as any other incompetent evidence would be excluded. In the *Adams* case the Court of Appeals held that there was no violation of the defendant's constitutional right not to be required to be a witness against himself, and that regardless of the question whether papers offered in evidence were obtained lawfully or by unlawful search and seizure, in either case they were properly received over objection that their production resulted from such unlawful search and seizure. The suggestion in the opinion (p. 358) that if there was unlawful search and seizure the defendant had a remedy for the wrong in an independent proceeding needs no explanation. In the *McDonald* case Mr. Justice Blackmar for the court, after referring to the *Adams* case, says: " It is the courts of the State of New York which authoritatively construe the laws of this State. The decision, therefore, of the Court of Appeals on this question is the law for this court, and the trial court did right in admitting the papers in evidence without considering whether or not they were seized in violation of a State law. If the said provisions of the Civil Rights Law have been violated the remedy is to punish the wrong and not to change the law of evidence. (Pp. 808, 809)."

Courts exist to accomplish justice in the actual world of living

human beings, and in such accomplishment it is indispensable to find the truth; therefore the rules of evidence generally sanction the pursuit of truth wherever it may be found and from whatever sources it may be obtainable.

I advise that the defendant's motion be in all things denied.

SALMON and MOSS, JJ., concur.

Motion denied.