Willie C. COLLINS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18668.

United States Court of Appeals
Fifth Circuit.

March 31, 1961.

Jerry A. Brown, Court Appointed Counsel, New Orleans, La., for appellant.

Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Collins was found guilty under an indictment which charged that he "did knowingly and wilfully possess a firearm, to wit, a double barrel shotgun having a barrel less than 18 inches in length, without having registered with the Secretary of the Treasury, or his authorized representative, the number and other marks identifying such a firearm, together with his name, address and place where said firearm is usually kept; all in violation of 26 U.S.C. 5841, 5861." [See also the definitions in the same chapter under Section 5848, subdivisions (1) and (4).] He was sentenced to imprisonment for a period of two years. On appeal, his principal contention, advanced with vigor by his able court-appointed counsel, is that the district court erred in overruling his motion (under Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C.) to suppress for use as evidence the shotgun obtained, so Collins claims, by an unlawful search and seizure.

After the shotgun had been seized, Collins admitted its ownership and possession. It was stipulated that the shotgun was not registered. There is thus no doubt of Collins' guilt. However, the broad protection extended by the Fourth and Fifth Amendments to all alike, the law-abiding as well as the criminal, prohibits the use of evidence obtained as the result of an "unreasonable" search and seizure. Weeks v. United States, 1914, 232 U.S. 383, 389 et seq., 34 S.Ct. 341, 58 L.Ed. 652; Agnello v. United States, 1925, 269 U.S. 20, 32 et seq., 46 S.Ct. 4, 70 L.Ed. 145; Marron v. United States, 1927, 275 U.S. 192, 194 et seq., 48 S.Ct. 74, 72 L.Ed. 231.

The search and seizure were made without a warrant. The Government seeks to justify them as incidental to a lawful arrest of Collins, citing such authorities as Carroll v. United States, 1925, 267 U.S. 132, 147 et seq., 45 S.Ct. 280, 69 L.Ed. 543; United States v. Lefkowitz, 1932, 285 U.S. 452, 462, 52 S.Ct. 4, 20, 76 L.Ed. 877; Harris v. United States, 1947, 331 U.S. 145, 150 et seq., 67 S.Ct. 1098, 91 L.Ed. 13, 99; Abel v. United States, 1960, 362 U.S. 217, 235 et seq., 80 S.Ct. 683, 4 L.Ed.2d 668. If the search is thus justified, it is not a significant consideration that the shotgun seized may have had no relation to the crime for which Collins was arrested. Harris v. United States, supra, 331 U.S. at page 154, 67 S.Ct. 1098.

We approach the evidence in the light of the foregoing principles and of

one further legal consideration. That is, that the arrest having been made by state officers supposedly for an offense against the State of Georgia, its validity is to be determined by reference to the law of that State. United States v. Di Re, 1948, 332 U.S. 581, 588, 589, 68 S.Ct. 222, 92 L.Ed. 210; Johnson v. United States, 1948, 333 U.S. 10, 15, note 5, 68 S.Ct. 367, 92 L.Ed. 436; Miller v. United States, 1958, 357 U.S. 301, 305, 78 S.Ct. 1190, 2 L.Ed.2d 1332.

On the afternoon of February 26, 1960, several City detectives of Macon, Georgia, answered a call from the Snow White Laundry pickup station on Second Street. The operator of the pickup station informed them that a boy and girl, each about 15 years old, had come in and asked for laundry in a fictitious name, or a name under which no laundry could be found. While the operator was looking for the laundry, she saw that the boy "had the cash drawer open from under the counter and was reaching over the counter." Later that same afternoon a similar attempt was made at another Snow White Laundry pickup station in the 800 block of Forsythe Street. There the boy was apprehended, and the manager called the police. In both instances the cash drawer had been opened, but no money actually stolen.

Upon being questioned by the detectives, the boy told them that his name was Jimmie Collins; that the girl's name was Julia Bryant; that the boy's uncle, Willie Collins, had driven them to Macon from Jacksonville, Florida, and had shown them the places from which they should steal money. The boy informed the officers that Willie Collins' station wagon would be parked on Mulberry Street near Fifth Street, and that he was positive that Julia would go back there. Julia was running toward the station wagon as the officers approached. After she entered the car, the officers arrested her and Willie Collins, who was seated in the station wagon. The evidence is silent as to whether the charge or cause of arrest was stated by any of the officers.

One of the officers drove Collins' station wagon to the police station, while others brought in Collins and the two fifteen-year-old children. At the police station all three were "booked" as "under investigation."

"A. We booked him on an open charge that we have 'under investigation of loitering', which is a case of investigating him for bringing these children up here for the purpose of taking money.

"Q. In other words, he was not charged with any crime but he was arrested for investigation only. Is that correct? A. That's right, sir."

About five to ten minutes after Collins had been thus charged, the officers searched his station wagon. From the floor board behind the front seat they removed two suit cases. When they opened one of those suit cases, they found in it the sawed-off shotgun disassembled into three parts, together with twelve shotgun shells loaded with "double ought bucks or slugs." No warrant was obtained either for the arrests or for the search.

Subsequently, the two children were turned over to the Juvenile Court of Macon, Georgia. Collins had been arrested at about 3 o'clock p. m. on February 26, 1960. He was detained until the afternoon of February 29, when he and the shotgun were turned over to a federal officer. He was then charged with the offense for which he was subsequently indicted, tried, and convicted.

If we should assume that any law could validly authorize an arrest for "investigation" or "investigation of loitering," no such law has been cited. The only Georgia statute authorizing an officer to arrest without a warrant which has been cited to us is Section 27–207 of the Code of Georgia:

"27–207 *Arrest without warrant.* —An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the of-

fender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant."

The decisions construing that section limit lawful arrests without a warrant to the three instances stated.

"No one who properly appreciates the sacredness of personal liberty, and the jealousy of the law in guarding the same, can doubt that, as a general rule, the law requires a warrant in order to render an arrest legal, whether it be made by a policeman or any public officer. Only three exceptions to this rule are recognized by the Code. See section 4723. The first is where an offense is committed in the officer's presence; the second, where the offender is endeavoring to escape; and the third, where from other cause there is likely to be a failure of justice for want of an officer to issue a warrant."

Thomas v. State, 1892, 91 Ga. 204, 18 S.E. 305, 306. See also, Hughes v. State, 1907, 2 Ga.App. 29, 58 S.E. 390; Jackson v. State, 1910, 7 Ga.App. 414, 66 S.E. 982; Yancey v. Fidelity & Casualty Co. of New York, 1957, 96 Ga.App. 476, 100 S.E.2d 653.

■ It may be that Collins could have been validly arrested as an accessory before the fact [1] for attempts to commit larceny, see Ga.Code Ann. § 27–2507 and § 26–2602; or that he could have been validly arrested for contributing to the delinquency of a minor child or children, see Ga.Code Ann. § 26–6802. We need

not decide whether Collins could have been so validly arrested for the evidence does not show that either of those charges was ever placed against him. Nor does the evidence show that he was ever informed of his arrest for any offense other than the charge on which he was "booked," viz: "under investigation of loitering." However, even if we should assume a valid prior arrest, that came to an end when he was confined in jail under the charge "under investigation of loitering." [2] He was not then charged with the commission of any legally defined crime. In the usual course of such illegal detentions, he would not have been released on bail, if bail had been tendered.

The rationale for upholding as reasonable a search incidental to a lawful arrest is thus stated in Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145;

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted."

Those reasons have no application to a person unlawfully arrested or to one whose arrest has terminated in an illegal detention. Nor were those the real reasons why the car was searched. [3] Collins'

---

1. Ga.Code Ann. § 26–602:

    *"Accessory before the fact.*—An accessory before the fact is one who, though absent when the crime is committed, procures, counsels, or commands another to commit same."

    Ga.Code Ann. § 26–603:

    *"Punishment of accessory before the fact.*—An accessory before the fact, except where it is otherwise provided, shall receive the same punishment that is prescribed for the principal in the first degree."

2. The evidence is definite that at the time of the search, "He [Collins] had already been booked."

3. Detective Brooks testified:

    "Q. Tell us about the car being searched. A. Well, after the three defendants had been booked, as the regular procedure, we went out to the car and looked to see if there were any valuables of any kind in the car before the car was put in storage. I don't remember which of the officers brought the suit cases into the city hall, but after we brought them in we put them on the table. We looked thru (sic) one of the suit cases and there

unlawful confinement cannot make reasonable the search of his effects.

We conclude that the search of Collins' station wagon and his suit case cannot be justified as incidental to any lawful arrest, and that the district court erred in overruling his motion to suppress. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.

was several pieces of clothing in it and another smaller suit case, we opened it and there was something wrapped in news-

paper. I unwrapped it and we found a sawed-off double barrel shotgun."