(36 Misc. Rep. 562.)

## PEOPLE v. HOCHSTIM.

(Supreme Court, Special Term, Kings County. December, 1901.)

**1. HINDERING OFFICER—EVIDENCE.**

To make out the criminal offense of hindering an officer in the performance of his duty, the first thing necessary to be proved is that the officer was in the performance of his duty. If, instead, he was committing a trespass on the rights and liberties of an individual, then he was not in the performance of his duty, and need not be submitted to, but could on the contrary be lawfully resisted the same as though he were a private person.

**2. SAME—ARREST WITHOUT WARRANT.**

The official position of a peace officer does not license him to arrest people at his pleasure without a warrant.

**3. SAME.**

The meaning of free government is that no individual can be seized, molested, touched, or intruded upon by government except according to the letter of the laws made or accepted by the people themselves, either by their direct vote or else through their representatives in legislature assembled.

**4. SAME—ARREST OF REGISTERED VOTER.**

Any person or officer who attempts to arrest a registered person while voting, or offering himself to vote, in order to prevent him from voting, commits an assault and battery, and also violates section 41k of the Penal Code, which forbids any one to willfully obstruct or delay "any elector on his way to a registration or polling place, or while he is attempting to register or vote."

**5. SAME.**

The citizen in voting is participating in the free expression of the sovereign will of the people, and is performing an act of sovereignty, and may not lawfully be arrested and taken away and thereby prevented from voting.

**6. SAME—CHALLENGE OF VOTER.**

If the right of a registered person to vote be challenged, he cannot be thrust aside, or arrested and taken away, or his vote refused, provided he be willing to take the qualification oath prescribed by the statute.

**7. SAME—THREATS AGAINST VOTERS.**

Any violence or restraint, or threats thereof, to prevent persons from voting, is a crime under section 41s of the Penal Code. The giving out of an announcement or threat that if certain registered persons present themselves and offer to vote they will then there be arrested comes within the said section.

**8. SAME—ARREST WITHOUT WARRANT.**

An officer may not lawfully arrest a person for an alleged felony without a warrant unless the felony has in fact been committed; he cannot act on information or reasonable grounds of belief in respect of whether the felony has in fact been committed. He can only act on reasonable grounds of belief in respect of whether the one to be arrested is the person who committed the felony. Code Cr. Proc. §§ 177, 183.

9. SAME.

An officer, the same as a private individual, may only arrest without a warrant where the person arrested committed the criminal offense, whether a felony or a misdemeanor, in his view; except that, if a felony has in fact been committed not in his view, an officer may arrest any person he has reasonable cause for believing to be the person who committed it.

10. SAME—DELAYING SUPERINTENDENT OF ELECTIONS.

Section 7 of the elections district law (chapter 499, Laws 1899) does not authorize the conviction of one who merely hinders or delays the superintendent of elections, or any of his deputies, in the performance of his duty, but only of "any such person" as is called upon to aid such officer and refuses his aid, or hinders or delays such officer. The offense of hindering or delaying an officer in the performance of his duty is created by Pen. Code, §§ 46, 47, 124, and section 7 of the elections district law, in creating a new felony, applies only to persons who are first called upon to assist the officer.

Max Hochstim was convicted of hindering a deputy state election superintendent, and applies for a certificate of reasonable doubt. Granted.

Ira Leo Bamberger and Charles H. Hyde, for the application.

Emil E. Fuchs, for the attorney general, opposed.

GAYNOR, J. It would never do to refuse a certificate of reasonable doubt in this case. Subject to correction, and with the fullest deference to the learning and experience of the learned trial judge, I am unable to see this conviction otherwise than as a most incredible miscarriage of justice. The trial instead of showing this defendant to be guilty of the crime charged against him, seems to me to show him to be guilty of nothing, and instead to reveal the complainant against him as guilty of a criminal offense of the most grave and dangerous character to the community. And yet the defendant finds himself convicted in a court of justice of an alleged felony while the complainant has not even been called to order or accused.

The defendant was indicted under the metropolitan elections district statute (section 7, as amended by chapter 499 of the Laws of 1899) for the alleged felony of hindering a deputy state superintendent of elections in the performance of his duty in the county of New York at the general election in 1899.

The evidence for the prosecution (leaving out of account altogether that for the defendant) shows that the defendant was a watcher for one of the political parties at a polling place; that the said deputy state superintendent was also stationed there in his official capacity; that James Bassett presented himself to vote; that he was duly registered as a qualified voter; that while he was standing in front of the ballot clerks giving his name and address and getting his ballot as required by law, the said deputy put his hand upon his shoulder and told him he arrested him for illegal registration. There were 25 or 30 citizens present in the room. The deputy then testifies as follows:

"A dispute immediately arose as to whether he (Bassett) should be arrested before he voted or after he voted. I said my orders were to place

him under arrest before he voted. The crowd then, among whom was Hoch-stim (the defendant), said that he should vote first and then afterwards I could arrest him. I said I would place him under arrest, and I called on the officers present to assist me."

The deputy had no warrant of arrest; the "orders" he refers to were only oral directions from the superintendent of elections, or some superior, who of course had no power to issue a warrant. That can only be done by a magistrate on a sworn complaint. The so-called orders were of no validity whatever. The defendant said nothing whatever except that Bassett should be allowed to vote and then be arrested. The deputy persisted in his effort to arrest Bassett and prevent him from voting. This created excitement and commotion among the crowd of citizens present. The crowd surged about and the deputy was in that way pushed into a corner, and some person unknown to him took hold of him and threatened to strike him if he did not let Bassett vote. During the commotion Bassett was found to be duly registered and was given his ballot by the ballot clerks. He then voted and went out. The defendant stood near him and assisted him to get his ballot, and also seems to have accompanied him to the door when he went out, though this is not very clear. From first to last he neither said nor did anything except as stated above. One witness says that as Bassett, the voter, went toward the door after voting the defendant was behind him pushing him; but being closely questioned he finally says he did not see the defendant "put his hand on anybody." The whole occurrence took only a minute or two. As Bassett went out the door was closed by some one, and the deputy says he could not get out; but this was only momentary. There is no evidence that the defendant closed the door; none of the witnesses knew who did it. That the crowd of citizens present got excited and indignant at the lawless conduct of the deputy in trying to prevent a registered voter from voting by arresting him and taking him away without a warrant, that there was a spontaneous general move-ment or surging of the crowd, and that the deputy was pushed about, was proved; but there is no evidence that the defendant instigated them in any way whatever. It will be a sad day indeed when such an outrage as this deputy was committing against the law and against individual liberty shall not excite American freemen to remonstrate and show their indignation. If such a day shall ever come it will be when our liberties are no longer prized or no longer survive.

There was no evidence whatever given that Bassett was guilty of the felony of illegal registering. There was not even any evidence to raise a fair suspicion to that effect. The evidence is that when Bassett presented himself for registration before election this same deputy challenged him; that thereupon he was examined by the inspectors as required by law, satisfactorily answered all the pre-scribed statutory questions, took the oath prescribed by law, and was duly registered. He and his three brothers were registered from the same house. The said deputy after such registration and before election day went to such house about 12 times, he says,

found Bassett there once, and took him before the state superintendent of elections for examination. By what right a citizen may be summarily taken before such superintendent does not appear. There is no pretense of any such right; there could be none under our constitution and laws; it was a mere exercise of arbitrary power and could have been lawfully resisted. But nothing wrong appears to have been found by the superintendent, for no charge was made against Bassett nor any warrant applied for against him before election; nor was any attempt made to arrest him, nor was he indicted or charged with any offense after election, or up to the present time, although more than two years have elapsed. There seems to be no ground for even a pretense that he illegally registered. In a word, the voter this deputy was trying to frighten away from the polls and prevent from voting by the high-handed outrage of arresting him without a warrant in the polling place, and while he was in the act of voting, appears by the evidence to have been a lawfully registered voter, and that to the full knowledge of the deputy himself. And no attempt has since been made to prosecute such voter for the pretended illegal registration. On the other hand, incredible as it may seem, the defendant has been indicted and convicted of the crime of felony, in that he hindered this deputy in arresting Bassett who, the indictment alleges, was guilty of a felony. The record of this trial reveals that Bassett was not a felon at all, but that nevertheless the defendant is convicted of felony for having hindered the deputy from arresting Bassett as a felon without a warrant. If Bassett had been indicted, tried and acquitted, the present conviction would be no more absurd. The case would be the same, viz., the person whom the deputy was hindered from arresting without a warrant as guilty of a felony is not guilty at all, and yet the defendant is guilty of having hindered the arrest of a felon. How could such a thing come to pass in the name of law and justice? There seems to be only one parallel for it. People v. Pedro, 19 Misc. Rep. 300, 43 N. Y. Supp. 44.

Nevertheless the learned trial court refused to advise an acquittal, and left the case with the jury. Furthermore, it seems to me that the law was otherwise gravely misstated to the jury by the learned court, as will be pointed out. The case being of transcendent importance, involving as it does the independence and freedom of our elections upon which the duration of our system of government by the people depends, and involving also the rights and liberties of the citizen against the exercise and dangerous growth of arbitrary power in government, it is the bounden duty of every judicial officer before whom it comes to treat it with the most anxious scrutiny and care; and I shall therefore fully state the reasons for my action. It is the kind of a case concerning which judges having a full comprehension of the rights of free men and of the restraints upon government deriving its powers from the will of the people only, have in past times spoken out plainly.

1. To make out the criminal offense of hindering or delaying an officer "in the performance of his duty" (to quote the very words of the statute applicable here), the first thing that has to be proved

is that the officer was "in the performance of his duty." If, instead, he was committing a high-handed outrage on the rights and liberties of an individual, as was the case with this officer, then he was not in the performance of his duty. It seems to be no longer known to many if not most of the citizens of the county of New York, though it is well understood all over the rest of the state, and of the whole country, that an officer who, instead of being in the performance of his duty, is in fact committing a wrongful trespass upon an individual, need not be submitted to, but may on the contrary be lawfully resisted the same as though he were a private person. His official position does not license him to interfere with and arrest people at his pleasure without a warrant obtained from some lawful court or magistrate. On the contrary, unless an individual has committed a criminal offense government has no right to arrest him without a warrant, whether through its police or peace officers, or through any agency or power whatever. That is what free government means. That it is necessary to state a principle which our forefathers in Europe so long struggled for against tyranny and oppression, and which being finally obtained made them free, and without which free government does not and cannot exist, is a painful thing. It is a household word wherever Anglo-Saxon government exists. Nowhere in this state except in the county of New York is it necessary to state this fundamental principle of free government, this foundation principle upon which free government rests; and, as we are all most painfully aware, wherever it comes to be disregarded, and police officers are suffered or taught by ignorant persons put in rule over them, to think they are above the law, and may go about interfering with the people and breaking or intruding into houses without right or warrant, general police oppression, extortion, corruption and even blackmail upon the community are sure to follow. Such a result is inevitable. It was because our forefathers saw it and suffered from it that they established free government, under which no individual could be seized, molested, touched or intruded upon by government except according to the letter of the laws made or accepted by the people themselves either by their direct vote or else through their representatives in legislature assembled.

If then it were the fact that the defendant hindered the deputy from arresting the voter Bassett, he would not be guilty of the felony of hindering him "in the performance of his duty," for the deputy was not in the performance of his duty. On the contrary, he was outside of his official duty. He was committing an assault and battery, and also violating section 41k of the Penal Code, which makes it a criminal offense for any person, whether private citizen or officer, to wilfully obstruct or delay "any elector on his way to a registration or polling place, or while he is attempting to register or vote." Police authorities and officers should be made to know that they are subject to the penal laws the same as every citizen. It follows that the learned trial court should have instructed the jury that the crime charged against the defendant was not made out, and advised an acquittal.

2. But leaving aside the fact that the deputy had no warrant, and that Bassett, the voter, appears not to have been guilty of the offense of illegal registration, I am further of opinion that Bassett could not have been legally arrested even with a warrant while voting or offering to vote. If there is a lack of judicial decisions to this effect it is only because of lack of such arrests until in recent years, and in the county of New York, where most of our police abuses originate. The citizen in voting is performing an act of sovereignty. He is participating in the free expression of the sovereign will of the people. If government may send officers to the polls with or without warrants to prevent citizens from voting by arresting them and taking them away, on the alleged ground that they have no right to vote, or, it may be, on any ground, then the freedom of elections may be destroyed. This would mean the destruction of government by the people. I do not see on what principle it could be tolerated. Not only is it a fundamental proposition that such a thing cannot be lawfully done, but when we look at our election statutes we find that the right of the citizen to vote cannot be summarily denied. If his right be challenged, he cannot be thrust aside, or his vote refused, if he be willing to take the qualification oath prescribed by the statute (Election Law, § 108). Goetcheus v. Matthewson, 61 N. Y. 420; People v. Bell, 119 N. Y. 175, 23 N. E. 533. It follows that no one may seize him and thereby prevent him. For officers to come to or be sent to polling places with or without warrants to arrest or threaten to arrest persons if they offer to vote, is not only a flagrant outrage, but a most dangerous criminal offense which should be dealt with in the sternest manner. Any violence or restraint, or threats thereof, to prevent persons from voting, is a crime. Pen. Code, § 41s, The giving out of an announcement or threat that if certain registered persons present themselves and offer to vote they will then there be arrested, is a crime; and yet the evidence in this case discloses that this deputy was at the polls with the avowed intention of arresting every person on a secret list which he carried who should dare to offer to vote. If voters could be arrested while voting or offering their votes, intimidation could be spread like an epidemic, and the timid, the friendless and the weak easily prevented by fear from coming to the polls. The powers of arrest specially given by the metropolitan elections district law furnish no authority whatever for such conduct. That useful statute contemplates no such thing, and if it did the courts would have to declare it to be in that respect so contrary to our plan and system of government as to be unconstitutional and void. U. S. v. Small (C. C.) 38 Fed. 103. It should not be lawlessly used.

False registering and voting is a crime to be guarded against and severely punished, but it should never be forgotten by a free people that they have more to fear as history shows from the exercise and growth of arbitrary power in government than from all other vices and crimes combined. It is important that crimes should be guarded against and punished, but far more important that arbitrary power in government should not be tolerated. No one who knows the history of the guaranties of our liberties, and of the long struggles

of the people against despotic power which finally attained them, can see them infringed without a feeling of resentment.

3. The learned trial court in refusing to advise an acquittal ruled as follows in regard to the power to arrest without a warrant, viz.:

"A peace officer may arrest a person (i. e. without a warrant) on reasonable ground, probable cause, to believe that 'a crime was committed, and he would be justified in doing it if it was a felony; but a private citizen has to go further and prove that a crime actually was committed."

In this way the learned trial court left the jury to say whether the deputy had reasonable ground to believe that Bassett had committed the felony of illegally registering, with an instruction that if they found he had that he could lawfully arrest him without a warrant. The evidence does not disclose grounds for such a belief, if even for a suspicion, so that even if the law were as stated, an acquittal should have been advised on the ground of lack of facts to permit of such a belief. A mere pretence of belief could not suffice.

a. But the law does not appear to be as stated by the learned court. Such a statement of the law seems quite unaccountable, except on the theory that the rights of the individual have so long been disregarded and trampled on by the police, or rather by those put in rulership over the police, in the county of New York, that even the courts sometimes in a moment of inadvertence are not conscious of the survival of such rights. We are not left to any conjecture about the law because it is declared by plain statute, which is the very contrary of the statement of the learned court. The law is that any citizen, or any peace officer, the very same, may without a warrant arrest (1) any person who commits any criminal offense in his view, whether it be only a misdemeanor, or the graver crime called a felony; and further, that any citizen, or any peace officer, the very same, may also without a warrant (2) arrest any person who has actually committed a felony although he did not see him commit it. The ancient reason for this latter was to prevent fleeing felons from escaping while a warrant was being procured. But in the case of those lesser offenses called misdemeanors by the law, no citizen, and, the very same, no peace officer, may make an arrest without a warrant unless the offense is committed in his view. · He may not act upon hearsay or the information of any one in respect of misdemeanors. To again state it, in the matter of arresting without a warrant, whether for a misdemeanor or for a felony, a private citizen and a peace officer have the very same right and power under the law, namely, (1) either may without a warrant arrest a person who commits any crime, whether misdemeanor or felony, in his view, and (2) either may without a warrant arrest any person who has in fact committed a felony although not in his view, but (3) neither may arrest any one without a warrant in the case of a felony unless the alleged felony has in fact been committed. If no felony has in fact been committed, then the arrest without a warrant is in every case unlawful and may be lawfully resisted. The law does not justify either an officer or a private citizen in arresting for a felony without a warrant on mere suspicion or information that a felony has been committed. If either act without a warrant on groundless

suspicion or information on the question of whether a felony has in fact been committed, he acts at his peril. Nothing but the absolute fact that the felony has actually been committed will suffice to justify and protect the person making such an arrest, whether an officer or a private citizen. But if a felony has in fact been committed, the law does justify an officer, but not a private citizen, in arresting a person therefor without a warrant "on reasonable cause for believing" (to quote the words of the statute) that such person is the one who committed it. In a word, an officer, the same as a private citizen, is not permitted to act on mere grounds of belief on the question of whether a felony has in fact been committed; nothing but the absolute fact that it has been committed will suffice; but an officer is permitted to act on reasonable cause for belief on the question of whether the person arrested is the person who committed it. All of this is plain statute law. Code Cr. Proc. §§ 177, 183.

b. To sum it all up, every citizen has the power and the right to arrest without a warrant for every criminal offense, whether misdemeanor or felony, committed in his presence, and for every felony actually committed although not in his presence. But as it is not the legal duty of citizens to make such arrests, and as they have not the time for them, they have provided for the appointment and payment out of their substance of police or peace officers to make such arrests. In doing so, however, they have taken scrupulous care not to make such officers their masters, but only their honorable servants; they have taken scrupulous care in their laws to confer on them no power of arrest without a warrant except that which every citizen possesses. While they have conferred on such officers no power of arrest without warrant which they do not themselves possess, they have allowed one leniency to such officers, i. e., that already mentioned, i. e., that in case of a felony which has actually been committed, such officers may lawfully act on reasonable grounds of belief in respect of who the guilty person is. That is to say, if a felony has in fact been committed, and an officer arrests the wrong person for it without a warrant, and such person afterwards sues him for damages for the false arrest, he may defend himself by showing that he had reasonable cause to believe that such person was the right one, for in that case he acted lawfully.

c. The said ruling of the learned trial judge, that the officer could act on reasonable grounds of belief that the felony had been committed, was therefore contrary to law, for as we have seen such grounds of belief are not permitted on the head of whether the felony has in fact been committed, but only on the question of whether the person arrested is the one who committed it. An officer must actually know that the felony has been committed before he may arrest any one for it without a warrant; it is his business to find out that fact before he arrests without a warrant; and then he may look for the person who committed the felony, and may arrest any person "he has reasonable cause for believing" (to use the precise words of the statute) to be the person who committed it. But if the officer does not know that the felony has in fact been committed, the

only lawful and orderly course is to apply to a magistrate for a warrant; and the same is the case with private persons. The magistrate then becomes the judge on all the facts of whether the crime has been committed, and issues or refuses the warrant.

4. But the learned trial judge went even beyond his said statement that the officer could act on reasonable grounds of belief that the felony had been committed, for he charged the jury that the officer had the right to make the arrest without a warrant "provided that he had reasonable cause to suspect that Bassett was not entitled to vote;" thus making suspicion enough for the officer to act on. As this must have been said in a moment of inadvertence I shall do no more than call attention to it. It may be the law of some despotic country, but it is not the law in this free republic, nor in England, nor in any free state. It means despotism.

5. The learned trial judge also refused to rule that the defendant could not be held responsible for the acts of the other persons in the room, and charged the jury that "if this defendant in conjunction with several other persons, joined together with a common purpose and design to prevent and hinder this officer in the discharge of his duty, then what each one did in pursuance of that purpose is the act of all the others." There was no evidence whatever of any such combination, common purpose or design. On the contrary, it was not even shown that the defendant knew the other persons at all, and it is manifest that all that occurred arose spontaneously out of the just indignation of all present at the outrageous conduct of the deputy.

6. It seems to me also that the learned trial court has caused the jury to convict the defendant of an alleged felony which does not exist at all in law. The learned trial judge instructed the jury that the defendant was indicted under section 7 of the metropolitan elections district law (Laws 1899, c. 499), and then saying "it reads as follows," read to them as follows, viz.:

"A person who shall wilfully and feloniously hinder or delay, or attempt to hinder or delay, a superintendent or deputy superintendent of elections in the performance of his duty shall be guilty of a felony."

There is no such clause in the said section. The said section first provides as follows: "The state superintendent, or any deputy, may call on any person to assist him in the performance of his duty"; and (leaving out what is not consecutive and relevant) it then continues, viz.:

"Any such person" * * * "who shall fail on demand by the state superintendent or any deputy to render such aid and assistance in the performance of his duty as he shall demand, or who shall wilfully hinder or delay, or attempt to hinder or delay, such superintendent or deputy in the performance of his duty, shall be guilty of a felony."

The phrase "Any such person" plainly refers to the persons referred to in the preceding sentence, namely, any persons called upon by the officer to aid him. The statute therefore is that "any such person," i. e., any person who has been so called upon, who shall refuse his assistance to, or hinder or delay, the officer, shall be guilty of a felony. But there is no evidence in this case that the defend--

ant was called upon by the deputy to aid him, and hence he is not within the said statute at all. The Penal Code (sections 46, 47, 124) makes the hindering, delaying or resisting of officers in the discharge of their duty a misdemeanor, and fully covers the subject. The statute now under consideration creates a new offense and must be strictly construed. The legislature did not use the clearly limited phrase "any such person" to mean "any person." The court had no right to read "any person," or to so construe the statute.

The certificate is granted; and let the defendant be bailed at once.