## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### May, 1917.

## THE PEOPLE v. JOHN McDONALD and Others.

(177 App. Div. 806.)

BETTING AND GAMING*—REGISTERING BETS ON HORSE RACES CONTRARY TO
SECTION 986 OF PENAL LAW—SEIZURE OF DEFENDANT'S PAPERS WITH-
OUT SEARCH WARRANT—WHEN NO VIOLATION OF CIVIL RIGHTS LAW—
UNREASONABLE SEARCHES AND SEIZURES—CONSTITUTIONAL LAWS—
FEDERAL DECISIONS NOT APPLICABLE IN THIS STATE—REMEDY FOR
VIOLATION OF CIVIL RIGHTS—EVIDENCE—IDENTIFICATION OF DEFEND-
ANTS BY WIRE TAPPING—ADMISSIBILITY OF EVIDENCE OBTAINED BY
WIRE TAPPING—EVIDENCE JUSTIFYING CONVICTION—POWER OF COURT
TO REVIEW ACTION OF GRAND JURY.

Under the law of the State of New York documentary evidence which
is relevant to the issue must be admitted in a criminal trial without
inquiry as to whether it was seized in violation of section 8 of the
Civil Rights Law which affirms the right of the People to be secure
against unreasonable searches and seizures.

The Federal decisions on this subject rendered under the Fourth
Amendment to the Federal Constitution do not apply in this State,
for the Federal provision limits only the powers of the general govern-
ment.

It seems, moreover, that if the provisions of the State Civil Rights
Law have been violated the remedy is to punish the wrongdoer and not
to change the law of evidence.

In a criminal prosecution for violation of section 986 of the Penal
Law relating to the registering of bets or wagers upon horse races, it
is proper to allow a witness called by the prosecution to identify the
defendants by the sound of their voices as heard over the telephone by
tapping the wire, although at the time the witness listened he had
never before heard the voices of the defendants and based his identifi-
cation on hearing them speak afterwards.

* See Notes, Vols. 6, p. 225; 28, p. 207.

Evidence examined, and *held*, sufficient to justify the jury in finding that the identity of the defendants was established beyond a reasonable doubt.

Evidence as to a crime obtained by the police by tapping a telephone wire should not be excluded upon the ground that the police in obtaining the information violated sections 552 and 1423 of the Penal Law.

Evidence examined, and *held*, to establish a violation of section 986 of the Penal Law.

Betting in itself, although not lawful, is not, with the exception of betting on a prize fight, a crime; but public and professional gambling has been made criminal.

Mere proof that the defendants conducted in their establishment continuous betting on horse racing is not sufficient to establish a violation of section 986 of the Penal Law, for it must also be shown that the defendants kept in their establishment books, papers, apparatus or paraphernalia for the purpose of registering and recording the bets.

When a case is presented to the grand jury without previous consideration by a magistrate the court may order an inspection of the minutes, and if it appears that an indictment has been found in violation of the law it should be dismissed.

Evidence presented to the grand jury examined, and *held*, that the jury were justified in concluding that if unexplained or contradicted it would warrant a conviction, and hence that the indictment should not be dismissed.

APPEAL by the defendants, John McDonald and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 12th day of May, 1916, convicting them of a violation of section 986 of the Penal Law in occupying rooms in the county of Kings with books, papers, apparatus or paraphernalia for the purpose of recording or registering bets or wagers upon the results of trials or contests of skill, speed or power of endurance of horses.

*Frank X. McCaffry*, for the appellants.

*Ralph E. Hemstreet, Assistant District Attorney (Harry E. Lewis, District Attorney*, with him on the brief), for the respondent.

BLACKMAR, J.:

On January 30, 1915, officers of the law, armed with warrants to arrest the defendants McDonald and Lewis, but without a search warrant, forced an entrance into the dwelling house of defendant Lewis, where they found and arrested both of said defendants. At the same time they took from the person of defendant McDonald, and from tables and a drawer in a desk, certain papers which the People introduced in evidence upon the trial. The defendants objected to the introduction of these papers in evidence on the ground that they had been illegally obtained in violation of the provisions of section 8 of the Civil Rights Law (Consol. Laws, chap. 6; Laws of 1909, chap. 14), which affirms the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures. The objection was overruled and defendants excepted. The relevancy and importance of the papers as evidence was such that if they were improperly received in evidence the judgment should not stand.

After conviction the learned justice who presided at the trial granted a certificate of reasonable doubt founded on the question of the propriety of admitting such papers in evidence. Obviously the doubt in the mind of the justice was created by the decision of the United States Circuit Court of Appeals in Flagg v. United States (233 Fed. Rep. 481), where it was held to be error to admit in evidence papers and documents seized under circumstances somewhat similar to those in the case at bar. We think, however, that the law of the State of New York is that documentary evidence which is relevant to the issue must be admitted in a criminal trial without inquiry as to whether it was seized in violation of the provisions of the Civil Rights Law above referred to. (People v. Adams, 176 N. Y. 351.) In that case it was held to be immaterial whether the writings were seized under a search warrant or not, for, although the officers making the seizure said at the time that

they possessed a search warrant, yet when the defendant offered to prove the non-existence of the warrant the evidence was rejected, and this ruling was upheld by the Court of Appeals. (Adams Case, p. 363.) The trial justice was right in following the decision of the Court of Appeals without considering whether the cases in the United States courts are inconsistent or reconcilable with it. The Fourth Amendment to the Federal Constitution, which prohibits illegal seizures, does not apply to the States. Its full function is to limit the powers of the general government. (Fox v. State of Ohio, 5 How. [U. S.] 410; Twining v. New Jersey, 211 U. S. 78.) The decisions of the United States courts construing and determining the effect of such constitutional provisions, therefore, apply only to seizures made under Federal authority. In this case the seizure was made by officers who derived their authority from the laws of the State of New York. It is the courts of the State of New York which authoritatively construed the laws of this State. The decision, therefore, of the Court of Appeals on this question is the law for this court, and the trial court did right in admitting the papers in evidence without considering whether or not they were seized in violation of a State law. If the said provisions of the Civil Rights Law have been violated the remedy is to punish the wrong and not to change the law of evidence.

On January 20, 1915, ten days before the arrest, the police tapped the telephone wire leading into the residence of defendant Lewis; during four days between that time and the date of the arrest they listened to conversations over the wire, and, over the objection and exception of defendants' counsel, detailed them in evidence on the trial. The defendants claim that there was no evidence of the identity of the persons who spoke at the wire. At the time of the "listening in" the witness for the People had never heard the voices of two of the defendants, but claimed that from hearing their voices afterwards he could

identify the speaker.   Before receiving the evidence the court permitted cross-examination on the point of the ability of the witness to identify the voices, and thereafter admitted the evidence.   When the relevancy of evidence of spoken words depends on the question of the identity of the speaker the question, in the first instance, is for the court to decide, for it is always a question of law whether there is any evidence.   The question of its sufficiency thereafter becomes a question of fact for the jury.   When a witness gives his opinion of the identity of a voice heard over the telephone with that of a defendant, it matters not whether the knowledge which enables him to form such opinion was obtained before or after the voice over the wire was heard.   (People v. Dunbar Contracting Co., 215 N. Y. 416.)   At the time the evidence was received there was some evidence, although slight, which qualified the witness to speak as to the identity of the voice.   As the trial progressed the evidence of the substance of the conversations, taken in connection with the papers taken from the possession of the defendants McDonald and Lingsweiler, was so strong as to justify the jury in finding that such identity was established beyond a reasonable doubt.

The claim is also made that the act of the police in tapping defendants' telephone wire was illegal, and that, therefore, evidence of the conversations heard over the wire could not be received.   It is not necessary to decide whether such act is prohibited by section 552 of the Penal Law, which was intended to preserve telephone and telegraph message from wrongful use by employees, or by section 1423, which forbids unlawfully and willfully tapping telephone wires; for, at any rate, the doctrine of People v. Adams (supra) is applicable to such a case as well as to the use of papers and documents.   The only question before the trial court is the relevancy and materiality as evidence of such papers, documents or conversations, and no

collateral inquiry as to whether they were legally or illegally secured will be permitted to interrupt and disorganize the trial.

The defendants contend that the facts proved do not constitute a crime. The indictment alleged offenses under section 986 of the Penal Law. One count only was submitted to the jury by the court, as follows: " That the defendants kept and occupied a certain room and building in the county of Kings, with books, papers, apparatus and paraphernalia, for the purpose of recording and registering therein bets and wagers dependent upon the results of trials and contests of skill, speed and power of endurance of horses." This submission was warranted by the express terms of the statute and the indictment. (Penal Law, § 986.) Undoubtedly the crime charged against the defendants involved the element that the acts charged were in aid of continuous professional gambling. The room was to be kept and occupied with books, papers, apparatus or paraphernalia for the purpose of registering bets on horse races. Read with the context of the whole act, this can have but one meaning, viz., to strike at the means employed to aid the business of professional gambling. The offense is of the same nature as those condemned by many enactments of the criminal law. Betting in itself, although not lawful (Penal Law, § 991), has never, except in the instance of betting on a prize fight (Penal Law, § 1712), been made a crime, but public and professional gambling, which is believed to be productive of the greatest demoralizing effect on society, has been made the subject of criminal enactment. Such is section 986 of the Penal Law. Every case cited by counsel recognizes the distinction. (People ex rel. Collins v. McLaughlin, 128 App. Div. 599; People v. Albert, 136 id. 224; People ex rel. Sturgis v. Fallon, 152 N. Y. 1; People v. Bright, 203 id. 73; People v. Lambrix, 204 id. 261; People ex rel. Shane v. Gittens, 78 Misc. Rep. 7; affd., 155 App. Div. 921; appeal dismissed, 209 N. Y. 527.)

And the distinction was carefully pointed out to the jury in his charge by the learned justice who presided at the trial.

There were in the Lewis cottage two telephones installed. One, No. 6 Coney Island, was listed in the book. The other, No. 2231 Coney Island, not listed, was tapped. On four days between January 20 and January 30, 1915, about 150 different conversations were intercepted, and memoranda of them made. They were all of the same general character, and the first one taken is a fair example of all. At 2:10 P. M., January 20, 1915, the following conversation was taken from the telephone No. 2231 Coney Island: " Hello, Frank." " Hello, Johnny. Is this you, Johnny?" " Yes." " Requiem, two dollars to win; two dollars third; Open Smile, two to win, one to show. Sixth race: Reno, two to win; Hazel C., one to win; one, third; Net Maker, Runnage and Consoler, one dollar parlay to win. 'Dollar parlay to place, dollar parlay show; Lady Innocence, a dollar, one, two, three; Reno, two dollars to win; Tom Hancock, dollar place; Captain Druse, two dollars to win, two dollars place; Hazel C. and Requiem, one dollar parlay, one, two, three."

There was evidence that the participants in this conversation were defendants John McDonald and Frank Lingsweiler; and if anything were needed to show that the conversation concerned wagers on horse races, it was shown on the cross-examination of the witness Brown, who testified to the conversation. The case contains upwards of seventy pages of evidence detailing conversations of the same general character, although some of them were more explicit. In 147 of them defendant McDonald participated, and defendant Lingsweiler in 23.

This evidence shows that there was going on in the Lewis cottage systematic and continuous betting on horse races, but that is not enough; it must also be shown that the defendants kept there books, papers, apparatus or paraphernalia for the purpose of registering and recording the bets. Without this the crime is not proved, and for that we must have recourse to

the books, papers and documents seized in the rooms and introduced in evidence. These books, papers and records, being very voluminous, were not printed but presented to this court in their original form. An examination of them leaves no doubt that they contain hundreds of records of bets on horse races, made practically daily for several weeks. Nor do they need elucidation by the opinion evidence of expert witnesses as to their character. It is obvious on inspection, and such evidence amply justified the finding of the jury.

The defendants claim that the indictment should have been dismissed as not founded on legal evidence. We cannot acquiesce in the view that the action of the grand jury is beyond review or control by the courts. It is true that the indictment is a charge merely, but in the popular view it is peculiarly damaging to the character of the accused. When a case is presented to the grand jury without previous consideration by a magistrate, it is not improper that the court should order an inspection of the minutes. Before a magistrate the defendant may be heard on his own behalf. The proceedings before a grand jury are secret and *ex parte*. Nevertheless, the grand jury is not a law to itself. Its powers and duties are prescribed by statute, and the grand jury must be instructed thereto by the court, either orally or by furnishing them with a copy of the sections of the Code of Criminal Procedure governing their conduct. (See Code Crim. Pro., §§ 248, 252–267.) If it appears that an indictment has been found in violation of the law, it should be dismissed. But a review of the evidence presented to the grand jury in this case satisfies us that they were justified in the conclusion that unexplained and uncontradicted, it would warrant a conviction.

The motion to dismiss the indictment was properly denied by the trial court, and the judgment of conviction should be affirmed.

JENKS, P. J., THOMAS, STAPLETON and RICH, JJ., concurred.

Judgment of conviction affirmed.