PEOPLE v. JAKIRA. • 303

Misc. 303]    Court of General Sessions, New York County, March, 1922.

---

PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ABRAM JAKIRA, Defendant.

Court of General Sessions of the Peace in and for the County of New York, March, 1922.

Crimes — unlawful search and seizure — articles so procured must be returned if seasonably demanded and cannot be used as evidence against accused — constitutional law.

A search without a warrant or upon an insufficient warrant, except at the time of making a valid arrest, is unlawful.

The introduction against a defendant either before the grand jury or upon the trial of the indictment, of evidence obtained by an unlawful search and seizure, violates his constitutional right against self-incrimination.

The apartment of defendant was invaded by police officers without a search warrant and with no intention of making a search they compelled him to open his suitcase, which was closed and strapped, and show its contents. A revolver found in the suitcase was taken by the officers.   The defendant was placed under arrest without a warrant but before an indictment was found against him he made a motion for an order for the return of his property so seized.   Upon the hearing of the motion it was conceded by the district attorney that the search and seizure, as the result of which the revolver was taken, was without a search warrant and was an invasion of defendant's premises without any warrant at all and no claim was made that any crime had been committed or attempted in the presence of the officers.   *Held*, that the search and seizure having been made without warrant was *prima facie* illegal.

The said search and seizure was also in violation of section 8 of the Civil Rights Law of the state and of the Fourteenth Amendment of the Constitution of the United States which forbids all states to deprive people of their liberty or property without due process of law, on the grounds (1) that due process of law includes the right to be free from unreasonable searches and seizures, and (2) that both the Federal and State Constitutions guarantee the defendant against self-incrimination.

That defendant submitted to a show of lawful authority cannot be construed either as a consent or a waiver of his constitutional rights.

An order is, therefore, granted for the immediate return to defendant of his said property and for a prohibition of any use against him of evidence obtained by the said unlawful search and seizure.

MOTION to compel return of property held to have been illegally seized.

*Felix C. Benvenga,* assistant district attorney, for plaintiff.

*Murray C. Bernays,* for defendant.

McINTYRE, J.   This motion is made by the defendant for an order directing the district attorney of this county and the police

commissioner of the city of New York to return to the defendant a certain revolver seized and taken from him as a result of an illegal search and seizure and enjoining the said district attorney and the said police commissioner from using the said revolver or any evidence or information derived from the said search and seizure against the defendant.

The facts relied upon appear fully in the moving papers, including the examination conducted in the Magistrate's Court, and other papers submitted in support of this motion. The district attorney conceded on the argument that the search and seizure, as the result of which the revolver was taken, was without a search warrant, and that it was an invasion of the defendant's premises without any warrant at all. It is claimed by the state that the facts disclosed in support of this motion do not warrant the return of the revolver in question. I am constrained to disagree with the contention of the district attorney. The district attorney argues that this motion should be denied under the authority of the case of *People* v. *Adams*, 176 N. Y. 351. I am of the opinion that the *Adams* case will not apply to the facts involved here. The rule in the federal courts should apply, in my judgment.

In the *Adams* case the defendant was convicted of the crime of " knowingly " possessing policy slips. It appears that the defendant occupied an office in this city, wherein was his desk, trunk, tin boxes and other articles of personal property. On the occasion of the seizure of these articles the defendant was in his office. Officers of the law appeared and stated that they had a *search warrant*. The defendant replied, in substance, before they proceeded to search, that it was not his office, and that they would proceed at their peril. The defendant was then placed under arrest and searched and the premises were searched. A number of papers were seized, among them policy slips, for the possession of which the defendant was indicted and convicted. Other papers were seized, and upon the trial of the defendant all the papers obtained were received in evidence, the policy slips being offered for the purpose of showing the commission of the crime charged in the indictment, and the other papers offered with a view to connect the defendant with their possession. Objection was made to their reception in evidence. Upon review the court held that the papers were admissible in evidence; that the underlying principle was that the court, when engaged in trying a criminal case, would not take notice of the manner in which witnesses obtained possession of papers or other articles of personal property. It appears, too, that the legality of the seizure made in the *Adams* case was raised for the first time at the trial. In this case the question of the

legality of the seizure was raised before an indictment against the defendant was lodged by the grand jury on a motion for the return of the property in question.

Where an officer, acting under a void search warrant, entered and searched a residence for opium, and while making such search found a loaded revolver, and the search warrant was vacated and set aside, and the defendant was indicted for having in his possession a revolver without a permit, a motion for an order directing the return of the revolver and the dismissal of the indictment should be granted, as there was no authority for such seizure, no crime having been committed in the presence of the officer and he having no probable cause for believing that the revolver was in the defendant's possession; that the officer had no lawful right to search the defendant's residence and seize the revolver without a search warrant. *People* v. *Kinney*, 185 N. Y. Supp. 645.

In the case at bar the officers proceeded to remove certain property from the defendant's apartment, among other things a revolver whose ownership is alleged to have been admitted. I might add that the defendant has been vigilant to assert his rights before indictment.

It appears in the testimony taken before the magistrate that the officers invaded the apartment of the defendant without any intention of searching it; that they compelled the defendant to open his suitcase, which was closed and strapped, and show its contents; that the defendant did not show the contents of the suitcase voluntarily. It was in the suitcase that the pistol and revolver are alleged to have been found. The defendant was arrested without warrant. There is no claim that any crime had been committed or attempted in the presence of the officers. The defendant had committed no felony in the arresting officer's presence or elsewhere, nor did the arresting officer know that a felony had in fact been committed. Section 177 of the Code of Criminal Procedure is specific on the point that an officer must actually know that a felony has been committed before he may arrest any one for it without a warrant. The mere belief that a felony has been committed, no matter how reasonable the belief may be, does not justify an arrest without a warrant. A peace officer may arrest without a warrant only when a felony has in fact been committed and he has reasonable cause for believing the person to be arrested to have committed it. The defendant's arrest was, therefore, illegal. *People* v. *Hochstim*, 36 Misc. Rep. 562.

Judge Gaynor (p. 572) stated in granting a certificate of reasonable doubt: " An officer must actually know that the felony has been com-

mitted before he may arrest any one for it without a warrant; it is his business to find out that fact before he arrests without a warrant; and then he may look for the person who committed the felony, and may arrest any person 'he has reasonable cause for believing' (to use the precise words of the statute) to be the person who committed it.    But if the officer does not know that the felony has 'n fact been committed, the only lawful and orderly course is to apply to a magistrate for a warrant."

An arrest can be made under section 177 of the Code of Criminal Procedure, by a peace officer without a warrant, *only* where the person arrested has committed a felony, although not in his presence, or where a felony has in fact been committed, and the officer making the arrest reasonably believed the person arrested to have committed it.    Even in the case of a felony, to justify an arrest without a warrant it is necessary to establish that a felony has in fact been committed.    *Stearns* v. *Titus*, 193 N. Y. 272.

It is clear, therefore, that no right to arrest the defendant was shown (prior to the search) in the testimony taken before the magistrate, and that the search cannot be justified on the ground that it was incident to a valid arrest, as was ruled in *Smith* v. *Jerome*, 47 Misc. Rep. 22, and other cases.

In view of the explicit language of section 8 of the Civil Rights Law a search without a warrant except at the time of mak'ng a lawful arrest is unlawful.    Section 8 of the Civil Rights Law is almost identical with the Fourth Amendment to the United States Constitution.    Said section of the Civil Rights Law provides as follows: " The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, ought not to be violated; and no warrants can issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." In spite of this explicit language they proceeded to search and seize property of the defendant in the premises occupied by him. Our state and federal courts have been repeatedly called upon to reassert the potency of state and federal guaranties against unreasonable search and seizure.    The courts have invariably held, when the question has come before them, that a search without a warrant or upon an insufficient warrant, except at the time of making a valid arrest, is unlawful.    The recent New York cases supporting this view are: *People* v. *De Vasto*, 198 App. Div. 620; *State* v. *One Hudson Automobile*, 116 Misc. Rep. 399;    *People* v. *738 Bottles of Intoxicating Liquor*, Id. 252; *Matter of Application for Search Warrant*, Id. 512;    *People* v. *Kinney*, 185 N. Y. Supp. 645;    *Matter of Horschler*, 116 Misc. Rep. 243,

PEOPLE v. JAKIRA. **307**

Misc. 303]   Court of General Sessions, New York County, March, 1922.

The leading federal cases and some recent decisions of the federal courts are: *Weeks* v. *United States,* 232 U. S. 383; *Silverthorne Lumber Co.* v. *United States,* 251 id. 385; *Amos* v. *United States,* 255 id. 313; *Gouled* v. *United States,* Id. 298; *Flagg* v. *United States,* 233 Fed. Rep. 481; *United States* v. *Mounday,* 208 id. 186; *United States* v. *Mills,* 185 id. 318; *Ex parte Jackson,* 263 id. 110; *United States* v. *Silverthorne,* 265 id. 859; *United States* v. *Bush,* 269 id. 455; *United States* v. *Marquette,* 270 id. 214; *United States* v. *Slusser,* Id. 818.

The search and seizure in this case was in violation of the Civil Rights Law of the state of New York, and also in violation of the Fourteenth Amendment of the Constitution of the United States which forbids all states to deprive people of their liberty or property without due process of law, on the ground that due process of law includes the right to be free from unreasonable searches and seizures, and also upon the ground that the Constitution of the United States and the Constitution of the state of New York guarantee the defendant against self-incrimination. In the *Gouled* case, a recent case decided by the Supreme Court, it was held that an unlawful search violates the principle against self-incrimination.

In the *Weeks Case, supra,* Mr. Justice Day explained the origin of the guaranty against unreasonable searches and seizures in the following language: " As was there shown, it took its origin in the determination of the framers of the Amendments to the Federal Constitution to provide for that instrument a Bill of Rights, securing to the American people, among other things, those safeguards which had grown up in England to protect the people from unreasonable searches and seizures, such as were permitted under the general warrants issued under authority of the Government by which there had been invasions of the home and privacy of the citizens and the seizure of their private papers in support of charges, real or imaginary, made against them. Such practices had also received sanction under warrants and seizures under the so-called writs of assistance, issued in the American colonies."

The importance of the observance of this guaranty was stated by Mr. Justice Clarke, speaking for an unanimous court in the *Gouled Case, supra.*

It has been held that such rights are declared to be indispensable to the full enjoyment of personal security, personal liberty and private property; that they are to be regarded as of the very essence of constitutional liberty, and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen, the right to trial by jury, to the writ of habeas corpus and to due process of law. It

has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or gradual depreciation of the rights secured by them by imperceptible practice of courts or by well-intentioned but mistakenly overzealous executive officers. The prohibition of the Fourth Amendment is against all unreasonable searches and seizures, and for a government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers would be an unreasonable and, therefore, a prohibited search and seizure.

*People* v. *De Vasto, supra,* seems to be the first case in recent years to bring before an appellate court of this state the question of the legality and consequences of a search and seizure executed on an insufficient warrant of search. Manifestly the rule which applies to a search and seizure under an insufficient warrant will apply *a fortiori* to a search and seizure without any warrant at all. In this case intoxicating liquors had been seized from the defendant under a warrant of search issued upon a complaint which did not state sufficient facts. The court held that a search thus executed is unlawful, and that the liquor seized from the defendant must be returned to him without regard to the legality or illegality of his possession thereof.

In *State* v. *One Hudson Automobile, supra,* members of the state police had searched a car without a warrant and found a quantity of intoxicating liquor. Upon application the car and the liquor were ordered returned on account of the illegality of the seizure, it appearing that no warrant to search and seize had been obtained.

The prohibition against unreasonable search and seizure is universal in its application. It is not a guaranty of the right to remain undisturbed in the possession of specific property, but a guaranty against the unlawful invasion of the privacy of men and women living under the protection of our legal system.

In the recent federal case of *United States* v. *Bush, supra,* it appears that the defendants had been indicted for criminally receiving stolen goods. The conceded facts were that prior to the arrest, prohibition enforcement agents with an invalid search warrant searched the premises of the defendants for intoxicating liquors, and in doing so discovered a case of stolen underwear. It was held that the seizure was in violation of the constitutional rights of the defendants, and the indictment was dismissed.

The discovery of firearms upon the unlawful search of the defendant's apartment did not make the search and seizure legal. *People* v. *De Vasto, supra; United States* v. *Slusser, supra; People*

v. *Marxhausen,* 204 Mich. 559, 574; *Youman* v. *Commonwealth,* 189 Ky. 152.

Again I am compelled to say that the invasion, search and seizure made by the officers in the apartment of the defendant was illegal. Clearly the guaranty against unreasonable searches and seizures would be worthless for all practical purposes if we were to allow that that which was done by the police officers in this case was lawfully done.

Judge Peck made clear in the *Slusser* case, above cited, both the rule of law and the principle of social policy which prevent an unlawful search and seizure from being legalized by the discovery of evidence that a crime had been committed.

" An unlawful search cannot be justified by what is found. A search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor. It was against such prying, on the chance of discovery, that the constitutional amendment was intended to protect the people. Neither is the discretion of the officer, however good and well intentioned, a substitute in law for a search warrant issued by a proper magistrate."

In the case of *People* v. *De Vasto, supra,* decided by the Appellate Division, second department, in November, 1921, the *Slusser* case is cited with approval and follows the rule there laid down. All the cases cited above, as well as the New York and federal cases cited, have laid down the same rule whenever the question has arisen.

It has been contended by the district attorney that there was a waiver by the defendant of his constitutional rights. I must hold that there was no waiver by the defendant of any of his rights.

Officer Murphy testified in terms that the defendant did not show him voluntarily the contents of the bag in which the revolver was alleged to have been found, and I must add that the facts of the case make it clear that there was no consent by the defendant to the search. Officer Murphy and several others told the defendant that they were police officers, obtained admittance to the apartment, and proceeded immediately to search. Submission to a show of lawful authority cannot be construed as a consent or as a waiver of constitutional rights.

It appeared in the *Slusser* case that the government agents said that they wanted to search his premises, and that the defendant said: " All right, go ahead." The court said: " The search so permitted by Slusser, after declaration by the prohibition officer, with a display of his badge, that they were there to search the premises, was not by such consent as will amount to a waiver of constitutional rights, but, on the contrary, is to be attributed to a

peaceful submission to officers of the law." By virtue of no such means can the high constitutional rights of a citizen be invaded or taken away.

The search and seizure in this case was executed without warrant, and was, therefore, *prima facie* illegal. It is clear, furthermore, that the search and seizure was not legalized as an incident to any lawful arrest or by the discovery of the firearms or by any waiver of rights on the part of the defendant. It is clear, finally, that a search without a warrant or under an insufficient warrant, except at the time of making a lawful arrest, and un'ess legalized by circumstances which do not appear in this case, is conclusively unlawful. We come, therefore, to the central question of this case: What are the rights and remedies of a defendant who has been the victim of an undeniably illegal search and seizure? I, therefore, hold evidence obtained by an unlawful search and seizure may not be used against a defendant, and property thus seized must be returned to the defendant upon his motion.

The district attorney, when opposing this motion, strenuously argued that the *Adams* case (*supra*) and the *McDonald* case (*People* v. *McDonald*, 177 App. Div. 806) were controlling. These cases hold only that a court will not, upon the trial of an indictment, inquire collaterally for the first time into the methods of bringing before it competent evidence actually produced. In the *Adams* case the Court of Appeals held upon the record as it came before them that the officers were actually provided with a search warrant. This fact alone is sufficient to distinguish the *Adams* case from the case at bar or from any of the search and seizure cases referred to by the district attorney. Furthermore, objection to the use of the evidence was made in the *Adams* case for the first time at the trial. In the *McDonald* case the officers were armed with warrants to arrest the defendant; at the time of the arrest they searched the person of the defendant McDonald and the premises in which both defendants were arrested. Such a search is lawful as an incident to a valid arrest. See *Smith* v. *Jerome*, 47 Misc. Rep. 22. In the *McDonald* and *Adams* cases objection to the use of the evidence was made for the first time at the trial. The *Adams* and the *McDonald* cases are distinguishable from the case at bar in two important aspects: (1) The search and seizure in the *Adams* and *McDonald* cases was held to be lawful. In this case it cannot be said that the search and seizure was lawful. (2) In neither the *Adams* nor the *McDonald* case was any step taken before trial to protect the constitutional rights of the defendants, whereas in this case the defendant has taken seasonable steps to this end.

These cases held only that where a defendant makes objection for the first time at the trial to the admission of the evidence on the ground that it was unlawfully obtained, the evidence (if otherwise admissible) will be received.   This is purely a rule of procedure, based on the general rule of evidence, that " an objection to an offer of proof made on the trial of a cause raises no other question than that of the competency, relevancy and materiality of the evidence offered, and that consequently the court, on such an objection, cannot enter on the trial of a collateral issue as to the source from which the evidence was obtained."   10 R. C. L. 933.

The Supreme Court of the United States, when the case of *People* v. *Adams* came before it on a writ of error, gave this interpretation to it.   See *Adams* v. *New York*, 192 U. S. 585.   Defendant's objection, said Mr. Justice Day, was properly overruled because (p. 594) " The question was not made in the attempt to resist an unlawful seizure of the private papers of the plaintiff in error, but arose upon objection to the introduction of testimony clearly competent as tending to establish the guilt of the accused of the offense charged.   In such cases the weight of authority as well as reason limits the inqu'ry to the competency of the proffered testimony, and the courts do not stop to inquire as to the means by which the evidence was obtained."

The *Adams* case was again considered in *Weeks* v. *United States*, 232 U. S. 383, when the court held " that a court will not in trying a criminal cause permit a collateral issue to be raised as to the source of competent testimony."

Mr. Justice Day stated: " It is therefore evident that the *Adams Case* affords no authority for the action of the court in this case, when applied to in due season for the return of papers seized in violation of the Constitutional Amendment.   The decision in that case rests upon incidental seizure made in the execution of a legal warrant and in the application of the doctrine that a collateral issue will not be raised to ascertain the source from which testimony, competent in a criminal case, comes."

Mr. Justice Holmes, of the United States Supreme Court, writing for the court in *Silverthorne Lumber Co.* v. *United States*, 251 U. S. 385, held as follows: " The numerous decisions, like *Adams* v. *New York*, 192 U. S. 585, holding that a collateral inquiry into the mode in which evidence has been got will not be allowed when the question is raised for the first time at the trial, are no authority in the present proceeding, as is explained in *Weeks* v. *United States*, 232 U. S. 383, 394, 395."

The cases cited clearly demonstrate that it is the law, *first*, that papers found in the possession of a defendant at the time of his

lawful arrest, and being relevant and material to the prosecution, may be lawfully retained by the prosecution and used against the defendant upon his trial, even though there were neither warrant of arrest nor warrant of search and seizure at the time that the papers were taken; and, *second*, more than this, even though there be no lawful arrest, and there be no warrant of arrest or warrant of seizure, or even pending criminal charge, papers unlawfully seized from the possession of the defendant may be used against him upon the trial *unless he has made seasonable application for their return.* In the case at bar the moving papers satisfactorily disclose that immediately upon the arrest of the defendant application was made to the court for the return of all the papers and other things found in a bag belonging to the defendant.

I must decide that the evidence obtained in this case was by an unlawful search and seizure, and that it cannot be used against the defendant. The basis of this rule is that conception of social policy which places fundamental constitutional guaranties above any temporary or immediate exigency of criminal prosecution. This rule of policy is vividly summed up in the question asked by Mr. Justice Cox in *Flagg* v. *United States, supra* (C. C. A., 2d C., 1916), 233 Fed. Rep. 481: " Will the people be secure in their persons, papers and effects if seizures and searches made without pretense of legality are sustained by the courts? "

Answering this question the learned justice, with a pronounced negative, laid down the principle which has since been invariably followed in all the reported cases, both state and federal, that have come to my attention: " What becomes of this defendant, important as it is, sinks into insignificance when compared with the right of the people of the United States to be protected from unlawful search."

The federal courts have laid down the rule that evidence unlawfully obtained may not be used against a defendant either before the grand jury or upon the trial of the action or in any manner whatsoever, whether directly or indirectly.

Judge Mulqueen, of this court, laid down exactly the same rule in his charge to the September grand juries. His language is so clearly applicable to the case at bar that I will quote a portion of it.

" You must not entertain or receive any evidence which has been obtained by the officers of the law in violation of our fundamental rights. We have certain rights. The American people started on this continent an experiment of government; they had certain principles, and those men who founded this nation were wise and patriotic. They knew the results of misgovernment. They were inspired, and ' they builded better than they knew.'

They laid down certain rules of government which in their opinion were best adapted to produce the greatest happiness on earth and the greatest good of the greatest number.   Their principles were embodied in the federal constitution and in the amendments that were made thereto shortly thereafter, especially the fourth amendment, proclaiming forever than an American's house is his castle. You must keep in mind the meaning of those words.   There was a time in the history of the world when only the rich and the powerful could secure their rights and their privacy, and to do that they built great castles, with walls around them four, five or ten feet thick, and they hired retainers, men-at-arms, to stand guard, and they also built moats around the walls, and had all sorts of defenses so that none might enter their homes against their will.   No man has the legal right to say: ' I will go into that home, because I suspect that something wrong is going on.'   A judge must first issue a warrant, or a magistrate, and if that magistrate acts on improper or insufficient evidence he is held personally responsible.   Just remember that the police have only such powers as are given to them by the Legislature; that for all practical purposes they have no more power to make an arrest, as a general proposition, than a private citizen has.   So if evidence is brought before you which has been obtained in violation of the constitutional rights of the individual reject it.''

The introduction against a defendant either before the grand jury or upon the trial of the indictment of evidence obtained by an unlawful search and seizure violates his right not to incriminate himself.

Section 6 of article I of the Constitution of the state of New York and the Fifth Amendment to the United States Constitution provide that no person shall be compelled in any criminal case to be a witness against himself.   The use against a defendant of evidence obtained from him by an unlawful search and seizure is a violation of these prohibitions against compulsory self-incrimination. *Boyd* v. *United States*, 116 U. S. 616; *Gouled* v. *United States*, *supra;* 34 Harvard Law Review, 367, note 36, and cases there cited.

The *Boyd* case was decided in 1886, and may be regarded as the leading case on this point.   Proceedings were brought by the United States to secure the forfeiture of certain goods.   The statute provided that upon the demand of the government a defendant in such proceedings must produce invoices for the goods.   The statute did not give the government power to compel the production of these invoices, but provided that the defendant's failure after demand to produce them would be construed as a confession of the truth of the government's allegations with regard to their

contents.   The defendant produced the invoices and permitted them to be used under protest.   When the judgment of forfeiture was reviewed the court held that this provision of the statute was tantamount to an unreasonable search and seizure, and was, therefore, a compulsion upon the defendant to incriminate himself. The Fourth and Fifth Amendments, said Mr. Justice Bradley, writing for the court (p. 633), are intimately related, since unreasonable searches and seizures are almost always made for the purpose of compelling a man to give evidence against himself, " And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself.   We think it is within the clear intent and meaning of those terms."

Is the admission of such papers in evidence against a defendant when on trial a violation of the Fifth Amendment?

The court held it was.   Mr. Justice Clarke, writing for the court (*Gouled* v. *United States, supra*), said: " Upon authority of the *Boyd Case, supra*, this second question must also be answered in the affirmative.   In practice the result is the same to one accused of crime, whether he be obliged to supply evidence against himself or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers   *   *   *   the Fifth Amendment forbids that he shall be compelled to be a witness against himself in a criminal case."

In England, in star-chamber proceedings to find evidence among the papers of political suspects and to punish the publication of seditious libels, there grew up during the seventeenth and eighteenth centuries a practice of indiscriminate seizures under general warrants neither particularly describing the property to be seized nor based on any *prima facie* showing of the commission of the offense.   *Trial of Algernon Sidney,* 9 Howell State Trials, 818, 853, 868, 901, 995; *Entick* v. *Carrington,* 19 id. 1029, 1069– 1071; May Constitutional History of England, vol. 2, p. 124; Cooley Const. Lim. (7th ed.) 426.

General warrants were held illegal in a number of cases, of which the most celebrated is that of *Entick* v. *Carrington, supra.*   Lord Camden said in that case in the course of an opinion which the Supreme Court has called a " monument of English freedom: " " It is very certain, that the law obligeth no man to accuse himself; because the necessary means of compelling self-accusation, falling upon the innocent as well as the guilty, would be both cruel and unjust; and it should seem, that search for evidence is disallowed upon the same principle."

The same question from time to time arose in the American

colonies, and writs of assistance were frequently resorted to very much resembling the star-chamber general warrants that were used in England. They were characterized as " the worse instrument of arbitrary power, the most destructive of English liberty and the fundamental principles of law that ever was found in an English law book," since they placed " the liberty of every man in the hands of every petty officer."

Unlawful search and seizure was one of the causes that led the American colonists to rebel against a British king. Unlawfully entering the home of a citizen has been invariably condemned here and abroad, and the condemnation of it should be encouraged by our courts and viewed as a salutary practice.

The courts have power not only to protect the constitutional privileges of a defendant, but also to correct abuses of discretion in the conduct of its officers and subordinates.

The many decisions to which I have referred in this opinion lead me to the belief that the defendant is entitled to the relief asked for in his motion, namely, the return of his property, and for a prohibition of any use of evidence obtained by the unlawful search and seizure that was done in this case. He is entitled to the immediate return of the property unlawfully seized, upon the grounds heretofore stated by me, and in accordance with the rule laid down by the late Chief Justice White in *Wise* v. *Mills*, 220 U. S. 549, viz.: " The power to direct the return of the books and papers was equally possessed and might have been exerted upon the conception of the abuse of discretion, which was manifested by the taking possession of the books and papers under the circumstances disclosed." See, also, *Wise* v. *Henkel*, 220 U. S. 556, and *U. S.* v. *Maresca*, 266 Fed. Rep. 713, 717.

I wish to add in conclusion that I feel deeply indebted to the learned counsel for the motion in this case. He handed me a most masterly brief which facilitated me in the decision made.

The motion is granted.